Rambo's Estate.

Argued May 25, 1937. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*William J. Fitzgerald,* with him *James Herbert Egan,* for appellant.

*Desmond McTighe,* of *Fox & McTighe,* for appellee.

OPINION BY MR. JUSTICE MAXEY, July 7, 1937:

Joseph S. Rambo died on December 20, 1927, leaving to survive him five children: William C. J. Rambo, Anna Rambo Burke, Elizabeth S. Anders, Florence M. Rambo and Joseph D. Rambo, all of full age. His wife

predeceased him. On December 24, 1927, his will was probated and letters testamentary granted to William C. J. Rambo, Anna Rambo Burke, and the Norristown-Penn Trust Company. His personal estate had an approximate value of $984,000.

Decedent's will provided that his daughter, Florence M. Rambo, had the right to use his house at No. 1448 DeKalb Street, Norristown, as a home for herself, she to pay the taxes, insurance and repairs, that this house and belongings, upon her marriage or upon her no longer desiring it as a home for herself, was to become part of his residuary estate and be distributed by his executors accordingly, and that "so long as there shall be available income from my estate coming into the hands of my executors, I direct them to pay to my said daughter, Florence, thirty-five hundred dollars per annum for the upkeep of the house as a home for herself as above provided." After the foregoing bequest, the testator left his residuary estate in equal shares to his five children.

The first account of the three executors was filed in May, 1930, and on March 18, 1931, the adjudication was confirmed nisi, awarding the net ascertained balance for distribution "to the accountants, at their request, as testamentary trustees, to raise the annuity of $3,500 for Florence M. Rambo." Exceptions to this adjudication were filed on behalf of Joseph D. Rambo and a stipulation was thereupon entered into, signed and filed by all the testator's children, requesting that the adjudication be changed to read as follows: "The net ascertained balance for distribution will be awarded back to the accountants at their request, to be the subject of further accounting, in the meantime to pay to Florence M. Rambo the sum of $3,500 per year, as per direction in said will, and any income over and above the said sum of $3,500 to be divided equally among the five residuary legatees. The residue of said principal is awarded to William C. J. Rambo, Anna Rambo Burke and the Norristown-Penn Trust Company, executors as hereinbefore

directed." On December 2, 1931, the adjudication was so modified by the court below and the residue of principal amounting to $112,582.34 (including $99,154.94 in cash) was awarded to the three executors for the aforementioned purposes.

Florence M. Rambo died on July 21, 1934, and Elizabeth R. Anders died on October 19, 1934.

The second account, filed on May 4, 1935, showed the balance for distribution was composed, inter alia, of the following: "Norristown-Penn Trust Co. Mortgage Pool No. 1 Investment $49,000." Exceptions to the account were filed on October 21, 1935, by two of testator's children, to wit: William C. J. Rambo and Anna Rambo Burke, alleging that investments made in the estate were not made by the joint action of the three accountants and are therefore illegal. The second exception was taken to the investment of $49,000 in the Norristown-Penn Trust Co. Mortgage Pool No. 1, for the following reasons: "(a) It is nowhere shown in the account that such investment was made, nor when, where or how it was done, if it was done. (b) Accountants under the terms of decedent's will do not have the power of trustees to reinvest cash of decedent's estate in a mortgage trust pool. (c) . . . said mortgage pool was operated by the accountant, Norristown-Penn Trust Company, as trustee, and that the funds were received, both from individuals and from trust estates, for which said accountant was also acting as fiduciary. Participation certificates upon said mortgage pool were issued to the various individuals and trust estate and said funds so received were mingled indiscriminately and invested in mortgages without any allocation as between individuals and trust estates which constitute such investments improper and illegal investments for trustees to make. (d) . . . at the time the funds of the estate were awarded back to the accountants said mortgage pool was in default, in that some of the mortgages had defaulted in interest payments, taxes, etc., and reinvest-

ments of cash in such pool were improper and illegal. The facts in regard to the status of said mortgage pool are entirely within the knowledge of the accountant, Norristown-Penn Trust Company, and exceptants will require at the audit full information as to its situation during the period covered by the account. (e) Accountant, Norristown-Penn Trust Company, always considered participation certificates in said mortgage pool No. 1 as the equivalent of cash and not investments, and it was not until said pool became in default that said accountant changed its position and claimed that the participation certificates were trust investments. Exceptants will at the audit ask the Court to direct the accountant, Norristown-Penn Trust Company, to follow its former procedure, take over said participation certificates of $49,000 and substitute cash therefor. (f) Exceptants aver that the said mortgage participation certificates of $49,000 were placed in the estate of decedent without any joint action on the part of the three accountants, and, therefore, that said reinvestment of cash, if it be considered as investment, was improper and illegal."

At the audit on October 30, 1935, a request was made for additional counsel fee by Henry I. Fox, as attorney for accountants, to which exceptants objected. The court below awarded a fee of $2,000 to Mr. Fox, as attorney for the corporate fiduciary, and a fee of $500 to James H. Egan, as attorney for the individual fiduciaries. The court in its adjudication confirmed nisi on February 28, 1936, dismissed the exceptions. Thereupon exceptions were taken to the failure of the auditing judge to surcharge the trust company the sum of $49,000, representing the investment in Mortgage Pool No. 1, and also to the allowance of a $2,000 additional fee to Mr. Fox. On March 31, 1936, the court below filed an opinion dismissing all of the exceptions to the adjudication. This appeal followed.

As to exception No. 1, as "the only investments made by the executors were in Mortgage Pool No. 1 of the Norristown-Penn Trust Company and the payment out of principal of the monthly dues on the building and loan association stock . . ." (as the court below found as a fact), and "the questions involved" and the assignments of error relate only to the investment in the participation in the mortgage pool, the scope of the appeal is limited to that point, and this is covered by the second exception: *N. Y. & Pa. Co. v. N. Y. C. R. R. Co.*, 300 Pa. 242, 150 A. 480; *Frankford Trust Co. v. Schulte, Inc.*, 302 Pa. 421, 153 A. 747.

Participation in the mortgage pool referred to has heretofore been declared by this court to be a legal investment: *Guthrie's Est.*, 320 Pa. 530, 182 A. 248. That this pool was operated by the accountant, as trustee, and that the funds were received both from individuals and from trust estates for which the Trust Company was also acting as fiduciary, would not affect its legality, for it comes within the proviso of the Act of April 6, 1925, P. L. 152, sec. 1 (15 PS 2514).

Further complaint is made that "participation certificates upon said mortgage pool were issued to various individuals and trust estates and said funds so received were mingled indiscriminately and invested in mortgages without any allocation as between individuals and trust estates which constitute such investments improper and illegal investments for trustees to make." The testimony of Mr. Kriebel, the Trust Officer of the Norristown-Penn Trust Co., showed that at all times the bank kept separate ledger sheets for principal and separate ledger sheets for income in the name of the Estate of Joseph S. Rambo, William C. J. Rambo, Anna Rambo Burke and Norristown-Penn Trust Company, Executors, and the number of the mortgage participation certificate was clearly designated on the principal ledger sheets of the estate in the name of the three executors. When later a card system was installed and

the mortgage participation certificates were cancelled, there was entered on the principal ledger cards of the estate on which appeared the names of all the executors, the date, amount, and number of the certificate of investment, and in the account which was kept separate in the Mortgage Pool, the same number was designated as an investment by this particular estate. This not only complies fully with the proviso of the Act of 1925 (supra) but the testimony shows it was done at the suggestion of the Banking Department of Pennsylvania and in *Guthrie's Estate* (supra) we approved this system of identifying investments in a mortgage pool.

Exceptants claim that regardless of its legality that because in the first accounting five years earlier it was accounted for "in cash," and was, under the stipulation filed at the first accounting, awarded back to the accountants to be the subject of further accounting in accordance with the will and an arrangement agreed to by the heirs to pay certain income, that the beneficiaries are entitled to receive cash instead of the security in kind at this distribution period. This is not necessarily true and particularly under the facts of this case. While it is true that this item was accounted for in the first account as "in cash" when *in fact* it was already invested in the participations, the court below found as a fact "that the testimony clearly shows they (the exceptants) were aware of the investment in the participations from the beginning, received the interest upon them without complaint and accepted large distributions in cash therefrom from time to time."

The exceptants also say that the corporate fiduciary when it made this investment did so without any joint action on the part of the three accountants and without their supervision and inspection and that they were merely inactive trustees and that therefore the re-investment was improper and illegal. However, the testimony of Mrs. Burke, one of the executors, showed that on her trips to the Trust Company she looked at the income

ledger and saw this entry: "September 25, 1930; Mortgage certificate investments 3984, 3994 and 4048, $90,000; interest from May 1st to September 25th, $2,160." She was then asked, "Did you complain at that time to the Trust Company that that was an improper investment and that they should not have made it. . . .?" She replied, "No." She admitted she accepted the income from that investment. The other co-executor, William C. J. Rambo, admitted when interrogated by the court that he did not expect the estate "to be there in cash all that time till she [Florence Rambo] died" but that he "expected it to be invested in something." The general rule is that a trustee who, by failure to act or by direct action, has enabled his co-trustee to obtain exclusive possession of the trust subject matter, must examine the investments and accounts of the active colleagues. "This duty to supervise exists whether the inactive trustee, at the time he becomes a trustee, finds the co-trustee in control, or has passively allowed the co-trustee to take exclusive possession, or by his own positive act put the co-trustee in possession": Bogert, Trusts & Trustees, sec. 587 (1935).

The exceptants are not in position to question the propriety of this investment. If, as the court below found, they were aware of the facts and received benefits from the investment, affirmance of the investment may be implied. See *Macfarlane's Est.*, 317 Pa. 377, 381, 177 A. 12, and *Strawbridge's Est.*, 322 Pa. 406, 185 A. 726. If, on the other hand, they failed to supervise the work of their corporate trustee and failed to examine the investments made by it, they were negligent and will not now be heard to set up their own negligence to test the legality of the investment. The action of the court below in dismissing the exceptions was proper.

Appellants also excepted to the allowance of a fee of $2,000 to counsel for the estate. A fee of $2,000 was paid at the first accounting. Appellants contend that it was agreed that this should be the total counsel fee

charged. The auditing judge said: "We do not intend to decide the matter upon relative credibility but rather find as a fact that there was a misunderstanding between the claimant and the accountants in regard to the amount of the fee, in which case we regard it as just and proper that we fix the fee in consideration of all these circumstances. It appears to us that in justice the claimant should have an additional fee out of this distribution, but that it should not be in excess of the fee allowed in the first account of the executors upon the adjudication of which account the major portion of the estate was distributed. On the other hand, we see no reason why it should be any less in the light of the amount of work that was done in the entire administration of the estate, to say nothing of the fact that the amount for distribution in this account would almost carry a fee of $2,000 in consideration of the work incident to this account and the work done since the filing of the first account. Accordingly, Henry I. Fox, Esq., is allowed an additional fee of $2,000."

This court has frequently held that the allowance or disallowance of counsel fees rests generally in the judgment of the court of the first instance and its decision will not be interfered with except for palpable error: *Robb's Appeal,* 41 Pa. 45, and *Good's Est.,* 150 Pa. 307, 24 A. 623. In the last mentioned case, Mr. Justice MITCHELL said: "The amount of fees to be allowed to counsel, always a subject of delicacy if not difficulty, is one peculiarly within the discretion of the court of first instance. Its opportunities of judging the exact amount of labor, skill and responsibility involved, as well as its knowledge of the rate of professional compensation usual at the time and place, are necessarily greater than ours, and its judgment should not be interfered with except for plain error." We see no error in the amount of counsel fees allowed here.

The assignments of error are overruled.

The decree is affirmed, at appellants' cost.