Lare Estate.

Argued October 1, 1951. Before DREW, C. J., STEARNE, JONES, BELL, LADNER and CHIDSEY, JJ.

*Bresci R. P. Leonard,* with him *Rahauser, Van der Voort, Royston, Robb & Leonard,* for appellant.

*Elder W. Marshall,* with him *Reed, Smith, Shaw & McClay,* for appellee.

OPINION BY MR. JUSTICE LADNER, November 13, 1951:

The Fidelity Trust Company of Pittsburgh filed its *first* and *partial* account as administrator d.b.n. of the

Estate of Gertrude K. Lare, deceased. Marcellus R. Lare, Jr., surviving spouse, filed certain objections to the confirmation of the account which were dismissed by the auditing judge and exceptions to the auditing judge's adjudication were later dismissed by the court en banc, from which we have this appeal by Marcellus R. Lare, Jr.

From the learned auditing judge's adjudication we take the following statement of preliminary facts concerning this estate. "Gertrude K. Lare died on June 25th, 1942. On July 31, 1942, Marcellus R. Lare, Jr., the surviving husband, caused to be probated as her will a typewritten writing on the face of a bank check. On the same date letters of administration c.t.a. on the estate were granted to Mr. Lare, the exceptant in the present proceeding. As administrator c.t.a. Mr. Lare came into possession of the assets of the estate consisting of personal effects, furniture, an automobile, jewelry, cash, and securities. In December of 1942 the brothers and sister of the decedent appealed from the probate of the will, charging it to be a forgery. After a long hearing a decree nisi was entered in November, 1943, sustaining the appeal and revoking the letters of administration granted to Mr. Lare. On December 30, 1943, the decree nisi was made absolute by a decree of the Orphans' Court in banc.

"The final decree of December 30, 1943, terminated Mr. Lare's right to administer the estate. On appeal, the Supreme Court of Pennsylvania reversed so much of the decree of the Orphans' Court as refused an issue devisavit vel non. The portion of the decree removing Mr. Lare as administrator c.t.a. was not disturbed.

"During the seventeen-month period that he was administrator of the estate, Mr. Lare filed no inventory or account nor was anything done by him towards the settlement or payment of State or Federal taxes.

"The Fidelity Trust Company was appointed administrator d.b.n.[1] of Mrs. Lare's estate on January 6, 1944, one week after the letters of administration c.t.a. issued to Mr. Lare had been revoked. The administrator d.b.n. has filed a First and Partial Account on December 2nd, 1949, covering its administration of the estate from January 6th, 1944, to October 28, 1949. A final accounting in this estate must abide the final disposition of the pending will contest.''

At the audit of the account the principal objections were to the items of credit taken as compensation of the administrator and to fees of its counsel. The account shows a gross estate of principal $78,381.22, on which the accountant claimed credit for compensation at the rate of 5%, or $3,919.06. The account also shows income collected in the sum of $90,354.67, against which credit is claimed also at 5% or $4,517.73. The credit claimed for counsel fees of administrator's counsel was for the sum of $12,500. Much testimony was taken by the learned auditing judge during four days of hearings, all of which had his careful consideration.

In the appeal before us learned counsel for the appellant objects to the amount of commissions allowed on principal because it included commissions calculated on an item of $9,179.13, being a surcharge obtained against the appellant, Marcellus R. Lare, Jr., who had been removed as administrator c.t.a. It seems this surcharge was not actually paid to the accountant because it was agreed to be charged against Lare's ultimate share as an advance in distribution. It is also contended

---

[1] While the Trust Company was so designated in its appointment, the designation should have been "pendente lite," such appointment being authorized by Section 4 of the Fiduciaries' Act of 1917, P. L. 447, 20 P.S. ch. 3, app. 354. Such an administrator is virtually a custodian of the decedent's assets pending the will contest and endures only until the termination thereof. For powers and duties see *Katz's Estate*, 49 D. & C. 215 (1944).

the total amount of commission claimed on *principal* is excessive. We see no need to pass on these questions now because the whole credit item of commission on principal is prematurely taken. We have here only a *first and partial* account. It is not a proper practice for an executor or administrator to claim his commissions on *undistributed principal* until the final account is filed and his duties terminated (*Williamson Estate*, 368 Pa. 343, 82 A. 2d 49 [1951]) though he may claim on such part of principal as is distributed: *Scull's Estate*, 249 Pa. 57, 94 A. 476 (1915). The credit item of $3,-919.06 for compensation of executor on principal must thus be stricken out, without prejudice however to accountant's right to claim the same in its final account.

Commissions on *income* however are properly chargeable now because commissions on *income* are ordinarily considered earned when the income is collected: *L. E. Horwitz's Estate*, 7 Pa. Dist. (1898) (PENROSE, J.). The only objection made to the credit item of commissions on income is to that calculated on that part of the income received as dividends on the stock of the United Pocahontas Coal Co., which appellant states represents depletion of that corporation's assets. The record is barren of any proof that that corporation's assets were depleted in producing the earnings from which the dividends were paid. At the audit the appellant's counsel asked administrator's trust officer how much of the Pocahontas Stock income ($80,712.00) constituted depletion of the $46,020.00 included in the principal account as the value of the stock. The witness was unable to answer. We understand the appellant's point to be, if part of the income of $80,712.00 received as dividends was in fact a return of part of the value of the capital stock included in the principal account then there would be duplication of commissions if 5% were charged on both items. This, however, must be shown and we cannot pass on that question now because

of absence of proof. In any event there is no need to pass on the question now in view of the fact that we have stricken out all commissions on principal. Appellant will have ample opportunity to prove such duplication if he can when commissions on principal come again before the court for approval on final accounting.

Concerning appellant's contention that the sum of $12,500 paid to the administrator's counsel for services rendered to date was excessive, the learned auditing judge found: "The services rendered by counsel to the administrator d.b.n. were extensive and varied. There is in evidence Exhibit No. 4, setting forth on twenty-nine pages of legal-size paper a detailed statement of the services rendered by counsel to the administrator d.b.n. of this estate. This statement, as well as the testimony in the record, has been considered in measuring the value of the services rendered. Counsel successfully resisted the effort of Mr. Lare to prevent the grant of letters of administration d.b.n. to the Fidelity Trust Company and, thereafter, his effort to have the letters revoked. It became necessary to proceed against Mr. Lare for possession of the personal property of the estate. This matter was conducted by counsel with satisfactory results. Exceptions on behalf of the administrator d.b.n. to the inventory and appraisement and the account filed by Mr. Lare as administrator c.t.a. of the estate were prepared and filed by counsel. The exceptions were numerous and most of them were sustained by the court after a hearing that extended over a period of three days. As a result of the exceptions, a surcharge of $9,179.13 was entered against the administrator c.t.a. The Kilpatrick estate matter referred to in the discussion above, pertaining to the compensation of the administrator d.b.n., was difficult and exacting litigation. It was unusual and it placed a heavy burden upon counsel for the administrator d.b.n. It involved innumerable conferences, a searching and constant investigation ex-

tending over long periods. Much of the detail of the services rendered in this matter is set forth in Exhibit 4 and in the testimony. Counsel also intervened in the liquidation of the Bunker Coal Company in which the estate had an interest. They appeared at a number of hearings held by a Special Master and successfully advanced a position which Mr. Lare had requested the administrator d.b.n. to assert. Counsel successfully conducted negotiations for the reduction of the valuation by the Bureau of Internal Revenue of the shares of the Pocahontas Coal Company owned by the estate. This involved investigation and examination into the records of the Coal Company and the filing of a brief. The reduction in valuation resulted in a saving to the estate of Federal estate taxes in the sum of $4,144.77. Counsel also enforced the collection, to the extent of $1,-965.15, of a judgment which had been entered in Beaver County and had been thought to be worthless. In addition to the extraordinary services indicated above, counsel also performed all the usual and ordinary legal services which lawyers render to fiduciaries in the course of settlement of a decedent's estate. Giving consideration to all the items of services rendered by counsel and applying the rule for the measurement of the value of legal services laid down in Huffman's Estate No. 3, 349 Pa. 59, at pages 64 and 65, the auditing judge finds the fee paid to counsel for services rendered to the administrator d.b.n. to be fair and reasonable and not excessive."

To what extent if any the learned auditing judge relied on the detailed statement in narrative form setting forth all the services rendered by counsel and offered in evidence as Exhibit No. 4, does not appear. It has been a general practice in the orphans' courts for counsel whose fees are contested to prepare and present such a statement in the interest of saving the time of the court, the parties and the public. A copy given

to opposing counsel enables him to make a better cross-examination as to items he wishes to investigate further. This practice has been found salutary and such statements are usually received in evidence without objections for they are prepared by an attorney who is an officer of the court who has taken an oath upon admission to serve as such with fidelity to the court as well as to the client. Indeed, this well established practice has had such approbation of the bar that objections heretofore have been rarely, if ever made. In the instant case the record shows that Mr. Lare's counsel, who tried the case at the audit, himself suggested the preparation of the itemized statement of services rendered, saying, ". . . just as a suggestion to shorten this procedure, I think that if Mr. Bane will submit to us an itemized statement of what services they have rendered, and we have an opportunity to examine that . . . we can save a lot of time . . ." To this appellee's counsel assented. It was prepared and formally offered in evidence and no objections made by Lare's counsel, who proceeded immediately to cross-examine counsel on the same. Later the next day he sought to object to the statement (Exhibit No. 4) which objection the auditing judge correctly refused to entertain since it had been received in evidence without objection the day before. The fee paid was also supported as reasonable by the testimony of three experienced members of the Allegheny bar. Moreover, as the fee claimed was for services rendered in settlement of an estate, the court itself is amply able to appraise the reasonableness of the fee upon a mere recital of the nature of the services rendered: see *Wood's Estate*, 272 Pa. 8, 13, 115 A. 865 (1922).

In *Rambo's Estate*, 327 Pa. 258, 266, 193 A. 1 (1937), we said: "This court has frequently held that the allowance or disallowance of counsel fees rests generally in the judgment of the court of the first instance

and its decision will not be interfered with except for palpable error." In *Faust Estate,* 364 Pa. 529, 530, 73 A. 2d 369 (1950), Mr. Justice ALLEN STEARNE said, "Supervision of the amount of compensation is peculiarly within the discretion of the court below. Unless such discretion is clearly abused the judgment will not be disturbed on appeal . . ." See also *Bennett Estate,* 366 Pa. 232, 77 A. 2d 607 (1951).

In the case before us the learned auditing judge was familiar with the nature, character and importance of the matters referred to by him which required service far beyond that which the ordinary routine uncontested settlement of an estate would have required. While the counsel fee charged and paid is ample we find its approval by the court below to be neither a palpable error nor clear abuse of discretion.

In the examination of the record before us we noted that neither the adjudication nor the schedule of distribution contains any award of the balance shown in the account, back to the accountant. Such an award in the circumstances here present should have been made. As this was undoubtedly due to oversight on the part of the court below in failing to note that counsel who prepared the schedule had omitted such an award, we suggest that when the record is remanded, the Schedule of Distribution be amended by adding an award of the balance back to the accountant for further accounting after termination of the will contest.

The adjudication and schedule are directed to be modified so as to order the item of the accountant's disbursements dated October 28, 1949, in the sum of $3,919.06, being compensation on principal, be stricken out without prejudice to accountant's right to renew claim therefor on final accounting. That further, the balance shown to be due in the account be awarded back to the accountant for future accounting. The de-

cree appealed from as thus directed to be modified is affirmed at appellant's costs.