## Bickel Appeal.

Argued January 9, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*H. Rank Bickel, Jr.,* with him *Bickel, Davis & Katz,* for appellant.

*C. Vincent Henry, Jr.,* with him *Christian R. Gingrich,* for appellee.

OPINION BY MR. JUSTICE CHIDSEY, March 25, 1957:

Appellant is an attorney engaged in practice in Lebanon County. Following the termination of litigation involving an inter vivos trust in which as co-counsel he represented the trustee, appellant petitioned and obtained a rule from the Orphans' Court of that county upon all parties in interest to show cause why the court should not allow him a fee of $2,800 for his services, to be paid out of the corpus of the trust. The trustee, Lebanon National Bank, filed an answer averring, inter alia, that the fee requested was excessive. The life beneficiary who was also the settlor of the trust, filed an answer averring, inter alia, that she was under the impression that the trustee was represented in the litigation by C. V. Henry, Jr., Esquire, the solicitor of the bank, as sole counsel, and demanding full information as to the need of appellant's employment as additional counsel.

After hearing at which testimony was taken, the court entered an order refusing compensation in the amount requested but approving a fee in the amount of $1,000. This appeal followed.

President Judge EHRGOOD who conducted the hearing held that appellant was properly employed by the trustee bank and that to the extent that his services were rendered to the trustee in preserving the trust

against the attack made thereon, their nature entitled appellant to be paid therefor out of the principal of the trust. These conclusions are not here questioned, and the only matter for our determination on this appeal is whether the court abused its discretion in refusing the fee requested by appellant and fixing it at $1,000.

In January of 1937 Harriet E. Gipe, shortly after she became of age, executed an irrevocable deed of trust in which she appointed the Lebanon National Bank trustee and provided for the payment of income from the principal of the trust to herself for life, with remainder to her father, Harry S. Gipe. It appears that the principal of the trust consisted of cash and securities received by Harriet E. Gipe, the settlor and life beneficiary, upon the death of her grandfather, and at the time of the litigation in which appellant acted as co-counsel for the trustee bank the principal amounted to approximately $21,000.

About 13 years later, on April 18, 1950, a bill in equity was filed on behalf of Harriet E. Gipe at No. 3 Equity Docket, 1950, by L. E. Meyer, Esquire against Lebanon National Bank, Trustee, and Harry S. Gipe, seeking to set aside and invalidate the deed of trust on the grounds of lack of mental capacity, fraud, undue influence and coercion exercised by her father, Harry S. Gipe. Appearances and answers were filed to this bill by C. V. Henry, Jr., Esquire as attorney for the trustee bank and by appellant on behalf of the remainderman Gipe, and thereafter a hearing was held at which testimony was taken and argument had on legal questions presented.

Subsequently, in September of 1950, this suit was discontinued. However, a little over a year later, on November 23, 1951, another bill in equity at No. 11 Equity Docket, 1951, to set aside the trust was brought

by Attorney Meyer on the settlor-beneficiary's behalf, on essentially the same grounds contained in the earlier action. In the interval between the two proceedings Harriet E. Gipe married one John Levering, so that the second suit was brought in her married name, Harriet E. Levering. Appellant accepted service of this second bill as attorney for remainderman Gipe and filed an answer on his behalf denying the allegations of the bill and setting up laches as new matter. C. V. Henry, Jr., entered an appearance as attorney for the trustee bank which also filed an answer to the second bill. An answer to new matter was filed on behalf of Harriet E. Levering and served on appellant. A hearing was had on January 28, 1952 at which appellant represented the remainderman, Gipe, and Henry represented the bank. In November of 1953 Meyer, the attorney for Harriet E. Levering, withdrew from the case and C. R. Gingrich, Esquire entered his appearance for her.

Appellant testified that after Mr. Gingrich entered the case he rendered a bill for his services to his client, remainderman Gipe, in the sum of $500 which was paid. In the early part of 1954 there was a discussion between appellant and Gipe as to the continuing litigation and Gipe testified that he told appellant that he "wasn't going to spend any more money to try to protect it [the trust]". Thereafter appellant conferred with Henry, the attorney for the trustee bank, and the latter employed him as co-counsel. Hearings in the second proceeding at No. 11 Equity Docket, 1951 were held on April 23 and April 29, 1954. On August 13, 1954 a decree nisi was entered dismissing the settlor-beneficiary's complaint. Exceptions were filed thereto by her counsel, Mr. Gingrich, which alleged, inter alia, that Judge EHRGOOD was disqualified because, inter alia, he had been a partner of the attorney who

drew the deed of trust. These exceptions were served upon appellant as attorney for Harry Gipe and upon Henry as attorney for the trustee bank. The exceptions were heard by the Honorable WARREN K. HESS of Berks County, specially presiding, and were dismissed and a final decree entered on March 4, 1955. In July of 1954, prior to the entry of the decree nisi, the settlor-beneficiary filed a petition for the allowance of certain expenses, including a fee of $500 for Mr. Gingrich, her counsel. Preliminary objections were filed to this petition by appellant, apparently acting as attorney for the remainderman, Harry Gipe. At no time did appellant withdraw his appearance for Gipe, and following the final decree in the equity proceeding, a stipulation was entered into as the result of a petition by the settlor-beneficiary, which allowed payments to her in limited amount out of principal in addition to income. This stipulation was signed by appellant as attorney for Harry S. Gipe, remainderman, by Henry as attorney for the trustee, and by Gingrich as attorney for the settlor-beneficiary.

The foregoing chronology of the entire litigation is set forth because, as the court below stated, it is somewhat difficult to segregate the services performed by appellant as co-counsel for the trustee bank from those performed for the remainderman Gipe. Certainly the latter was the chief beneficiary of the favorable result of the litigation. However, in accord with his position and claim, the court fully considered the services rendered by appellant as co-counsel for the trustee bank in upholding the trust. Appellant became co-counsel with Mr. Henry in April of 1954 and continued to act as such until the final decree was handed down in March of 1955. During this period two further hearings were held at which, according to the court, further evidence and testimony was taken on essentially

the same matters which constituted the subject matter of the first hearing on January 28, 1952, when appellant still represented Gipe only.

Appellant was an experienced trial lawyer and although co-counsel Henry was present at the two April hearings, the hearings were actively conducted by appellant as apparently were all legal arguments. The two consulted together, and as appellant testified, "We collaborated as two lawyers do who are jointly engaged in the prosecution of a case.". Mr. Henry freely admitted that appellant had performed the major portion of the work and was agreeable to appellant's suggestion that their fee should be divided two-thirds to appellant and one-third to Henry. But Mr. Henry would not subscribe to a joint charge of $4,200 as was suggested by appellant and stated that he thought the fee should not be higher than $1,500. Thereafter appellant presented his petition for a fee to him individually in the amount of $2,800.[1]

The only testimony as to the value of appellant's services offered in the court below was that given by Mr. Gingrich, attorney for the settlor-beneficiary, Mr. Henry, and the appellant himself. Mr. Gingrich fixed the value at $500. Appellant claimed that Gingrich had an adverse interest as counsel for the settlor-bene-

---

[1] It may be observed in passing that $2,800 is approximately 14% of the principal of the trust and if allowed together with the allowance of some fee to which Mr. Henry is entitled, the corpus of the trust would have been substantially reduced and the income receivable by the life beneficiary materially decreased with little or no likelihood that the life beneficiary would receive because of her need the sum of $85 per month as provided under the terms of the stipulation executed by all parties in interest at the conclusion of the case. As said in Paragraph 12 of the Canons of Professional Ethics of the American Bar Association, "In fixing fees it should never be forgotten that the profession is a branch of the administration of justice and not a mere money-getting trade.".

ficiary and that he was "the loser" in the case. Mr. Henry who testified that his practice consisted principally of orphans' court, bank and trust work and considered himself qualified to testify as to local fees charged in that category, fixed the reasonable value of appellant's services at $1,500. Appellant of course fixed it at $2,800. He called no other witnesses in this regard. The court in a lengthy opinion in which it outlined all of the services alleged to have been performed by appellant took into consideration its knowledge of the rate of professional compensation in Lebanon County and arrived at $1,000 as a fair and reasonable fee. He stated that no extraordinary or unusual services were performed as claimed by appellant and that the legal questions involved were not novel as claimed by appellant, but were resolved by precedents in similar and analogous cases; that as to the time alleged to have been spent in research of the law and investigation of the facts in preparation for trial, most if not all thereof, were necessarily performed by appellant when he solely represented the remainderman Gipe in the first litigation and in the second proceeding in preparation for the hearing on January 28, 1952, held before he became counsel for the trustee bank. The court also considered the fact that for the extended services rendered Gipe from 1950 until 1954, appellant had billed and accepted from Gipe a fee of $500.

Appellant stresses the amount of time which he devoted to his case and which he said amounted to 116 hours. The amount of time spent is only one of the factors to be considered in ascertaining the value of professional services rendered.

In *Good's Estate,* 150 Pa. 307, 310, this Court stated: "The amount of fees to be allowed to counsel, always a subject of delicacy if not difficulty, is one pe-

culiarly within the discretion of the court of first instance. Its opportunities of judging the exact amount of labor, skill and responsibility involved, as well as its knowledge of the rate of professional compensation usual at the time and place, are necessarily greater than ours, and its judgment should not be interfered with except for plain error. . . .". Both *Good's Estate* and *Rambo's Estate,* 327 Pa. 258, 266, 193 A. 1, of similar import, have been cited with approval in *Harton's Estate,* 331 Pa. 507, 523, 1 A. 2d 292; *Berkowitz's Estate (No. 2),* 344 Pa. 485, 486, 26 A. 2d 295; *Davidson's Estate,* 334 Pa. 389, 395, 6 A. 2d 73, and *Lare Estate,* 368 Pa. 570, 84 A. 2d 334. In *Rambo's Estate,* supra, we said: "This court has frequently held that the allowance or disallowance of counsel fees rests generally in the judgment of the court of the first instance and its decision will not be interfered with except for palpable error: . . .".

*Moore's Estate (No. 1),* 228 Pa. 516, 77 A. 899, and *Crawford's Estate,* 307 Pa. 102, 160 A. 585, cited by appellant, are clearly distinguishable and inapposite. In the former it was held that the naked conclusions of an auditing judge without assigning any reasons in support that a fee was excessive will be set aside. In the latter the court below ignored the testimony of fourteen members of the local Bar that the fee was reasonable and that the sole beneficiary had agreed that the amount claimed was a proper counsel fee; no evidence was offered to the contrary and no explanation given for the reduction which the court directed.

After reviewing the record and the reasons given by the court below for its action in the instant case, we are of the opinion that the refusal of appellant's request for a fee of $2800 was fully warranted, and the allowance of a $1000 fee did not constitute an abuse of discretion.

Decree affirmed at the cost of appellant.