## LaRocca Estate.

Argued May 1, 1968. Before BELL, C. J., MUSMAN-
NO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Thomas J. Timoney*, with him *Foulke, Knight, Stefan & Timoney*, for petitioning attorneys.

*J. T. Coughlan, Jr.*, for natural guardian of minor.

OPINION BY MR. CHIEF JUSTICE BELL, October 3, 1968:

In 1954, Joe LaRocca created an inter vivos trust in certain real estate (which was conveyed to him by a third party) for the benefit of his minor grandson Julius LaRocca. Questions concerning this trust have been appealed to this Court on two prior occasions.* This time the issue is the amount of attorney fees which should be paid out of the trust estate for legal services rendered in connection with the protection of Julius LaRocca's interest in the trust.

By its terms, the trust provided that the income was payable for the "support, maintenance and education" of Julius LaRocca, born December 19, 1952, until he reached the age of twenty-one, at which time the real estate was to be conveyed to him in fee. No income from the real estate was applied or paid in accordance with the provisions of the trust, and nothing was done about this provision of the trust until after the separation in 1958 of Julius LaRocca's parents, Samuel (who was Joe LaRocca's son) and his wife Maria LaRocca.

In *1961*, Maria LaRocca engaged the services of attorneys Richard Knox and his brother John Knox, who thereupon filed in the Orphans' Court a petition for a citation seeking to require Joe LaRocca, trustee, to file an accounting of income received by him from the trust property and to make appropriate distribution. In response to this action, Joe LaRocca sought reformation of the trust instrument, alleging that because of

---

* See infra.

mistake the trust should be modified (1) to entitle him to receive the income from the trust property until his death or until the named beneficiary, Julius, reached the age of twenty-one years, and (2) to give him the power to revoke the trust. The Orphans' Court reformed the instrument and gave Joe LaRocca the income from the trust until his death or until Julius reached twenty-one, but refused to give Joe any power of revocation. On appeal to this Court in 1963, we reversed and decided the minor beneficiary was entitled to the income from the trust and the trust deed could not be reformed. *LaRocca Trust,* 411 Pa. 633, 192 A. 2d 409.

Joe LaRocca thereupon filed his account with the Orphans' Court which presented a number of legal questions with regard to the credits which were claimed by the trustee. Julius's mother was not satisfied with the Court's disposition of these questions and, as Julius's natural guardian, requested attorneys Richard Knox and John Knox to take an appeal to this Court in 1965. On this appeal, we modified the adjudication of the Orphans' Court, which resulted in a surcharge against the trustee in the amount of $5,861.31. *LaRocca Trust,* 419 Pa. 176, 213 A. 2d 666.

After that decision, the Knox brothers filed a petition in the Orphans' Court requesting payment from the trust estate of legal fees for all their services totaling $10,600.00, less certain credits. This petition was opposed by the trustees,* and also particularly by Maria LaRocca as natural guardian. After a hearing, President Judge TAXIS made an award to the Knox brothers of counsel fees totaling $7,000.00 payable out of the trust estate. The attorneys and Mrs. LaRocca filed separate appeals with this Court.

---

* A corporate fiduciary was appointed as co-trustee with Joe LaRocca in an earlier proceeding in the Orphans' Court.

The Knoxes contend: (1) that there was no contract with Maria LaRocca, but there was an understanding that because a minor's estate was involved, they would petition the Court at the conclusion of the litigation for an award of fair and adequate fees to be partially conditioned on the success of the litigation; (2) that the amount claimed was reasonable in view of the work performed and the number of hours spent by them in their representation of the minor over the five-year period involved;* and (3) that as the sole and direct result of their efforts, they have *created* a sizeable estate for the minor beneficiary.

Mrs. LaRocca contends that the amount claimed by the attorneys is unreasonable in view of the size of the minor's estate, and that we should set some lower unspecified amount or remand for a further hearing.

What is a fair and reasonable fee is sometimes a delicate, and at times a difficult question. The facts and factors to be taken into consideration in determining the fee or compensation payable to an attorney include: the amount of work performed; the character of the services rendered; the difficulty of the problems involved; the importance of the litigation; the amount of money or value of the property in question; the degree of responsibility incurred; whether the fund involved was "created" by the attorney; the professional skill and standing of the attorney in his profession; the results he was able to obtain; the ability of the client to pay a reasonable fee for the services rendered; and, very importantly, the amount of money or the value of the property in question.** *Huffman · Es-*

---

* The·claim was based on 450 hours spent by Richard Knox and 83 hours by John Knox, both employing an hourly rate of $20.

** We are familiar with the fact that an attorney can rarely ever receive a reasonable fee when the services rendered are very numerous and the amount of money or value of the property involved is small.

*tate (No. 3)*, 349 Pa. 59, 64, 36 A. 2d 640; *Bickel Appeal*, 388 Pa. 270, 276, 130 A. 2d 498; *Fraiman Estate*, 408 Pa. 442, 448, 184 A. 2d 494; *Thompson Estate*, 426 Pa. 270, 282, 232 A. 2d 625. A larger fee than usual is likewise frequently awarded when an attorney "creates" a fund.

By now it is hornbook law that the reasonableness of the fee is a matter for the sound discretion of the lower Court and will be changed by an appellate Court only when there is a clear abuse of discretion.

The attorneys assert that they have in effect *created* a fund in excess of $82,000 for the minor beneficiary. With this contention we disagree, both as to the creation and the amount of the fund. Included in this sum is the value of the real estate constituting the trust res ($28,200.00),* balance of income accumulated in escrow since our 1963 decision ($8,927.75), surcharge imposed by our 1965 decision ($5,861.33), value of future trust income estimated to the beneficiary's 21st birthday ($21,710.08), and credits disallowed in litigation involving the trustee's account ($17,467.33).

Mrs. LaRocca claims that the real estate was always part of the trust and was not created or secured by the efforts of the attorneys. She contends further that the future income from the trust is too speculative to form a standard upon which to judge the reasonableness of the fee.

Judge TAXIS, in fixing the fee, took into consideration the tremendous amount of time expended by the attorneys in this case and the quality of the services performed, as well as the value of the estate, which the attorneys claimed in the Court below to be $64,-

---

* The real estate is valued at both $20,000 and $28,200 in the record. In view of the uncontradicted appraisal of $28,200 which appears in the record, we will accept $28,200 as the fair value.

000.00 instead of the $82,000.00 which the attorneys claimed in their brief on appeal. Included in these figures was the speculative future rent receivable totaling $21,710. Without further supporting reasons, Judge TAXIS awarded a total fee as above mentioned of $7,000.00, which he considered fair and reasonable compensation for the services rendered by the Knox brothers. It would have been helpful if he had given in greater detail (in his adjudication or Opinion) the factors he took into consideration in fixing the amount of the fee and his reasons in support thereof. However, the present record, in our opinion, supports the fee which was awarded, and we believe that Judge TAXIS did not clearly abuse his discretion or, as some cases express it, commit palpable error. *Thompson Estate,* 426 Pa., supra; *Bickel Appeal,* 388 Pa., supra; *Rambo's Estate,* 327 Pa. 258, 193 Atl. 1; *Lare Estate,* 368 Pa. 570, 84 A. 2d 334; *Bennett Estate,* 366 Pa. 232, 77 A. 2d 607; *Faust Estate,* 364 Pa. 529, 73 A. 2d 369.

In *Thompson Estate,* 426 Pa., supra, the Court pertinently said (pages 281-282) : "It is a 'well entrenched rule of law in this State that the responsibility for determining the amount of counsel fees rests primarily with the auditing judge.': Mosicant Estate, 16 Pa. D. & C. 2d 66 (1959), Bickel Appeal, 388 Pa. 270, 130 A. 2d 498 (1957) affirms this: 'In Good's Estate, 150 Pa. 307, 310, this Court stated: "The amount of fees to be allowed to counsel, always a subject of delicacy if not difficulty, is one peculiarly within the discretion of the court of first instance. Its opportunities of judging the exact amount of labor, skill and responsibility involved, as well as its knowledge of the rate of professional compensation usual at the time and place, are necessarily greater than ours, and its judgment should not be interfered with except for plain error . . . ." Both Good's Estate and Rambo's Estate, 327

Pa. 258, 266, 193 A. 1, of similar import, have been cited with approval in Harton's Estate, 331 Pa. 507, 523, 1 A. 2d 292; Berkowitz's Estate (No. 2), 344 Pa. 485, 486, 26 A. 2d 295; Davidson's Estate, 334 Pa. 389, 395, 6 A. 2d 73, and Lare Estate, 368 Pa. 570, 84 A. 2d 334. In Rambo's Estate, supra, we said: "This court has frequently held that the allowance or disallowance of counsel fees rests generally in the judgment of the court of the first instance and its decision will not be interfered with except for palpable error:". . . .' (pp. 276, 277)."

In our judgment, the services of the Knox brothers effectively protected but did not create the minor beneficiary's interest in the real estate constituting the trust res. Had Joe LaRocca prevailed in the original litigation, his grandson would have had but a mere future expectancy in this property, subject to his grandfather's right to receive all the income for his life and to revoke the trust. He now has an assured right to receive the property in fee upon attaining the age of twenty-one. Furthermore, the surcharge of almost $6,000.00 also involves a pecuniary benefit to the minor beneficiary.*

While the services of the attorneys consumed a tremendous amount of time and produced a very beneficial result for their client Julius, the small amount of money involved must be taken into consideration in fixing their fee; and, we repeat, we find no clear or palpable error in Judge TAXIS's award.

With respect to Mrs. LaRocca's appeal, we believe that the interests of the minor beneficiary were adequately represented by the trustees, and we find no

---

* We do not pass on the pertinence of the disallowed principal and income credits as claimed by the trustee in his account totaling $17,467.33, as this was not presented to the Orphans' Court as a basis for the reasonableness of the fees claimed.

550

merit in Mrs. LaRocca's contention that the lower Court erred or abused its discretion in failing to appoint a guardian ad litem for Julius. Section 12, Rule 4, of the Orphans' Court Rules, vests wide discretion in the Orphans' Court Judge in these matters, and we find no error of law or clear abuse of discretion. Cf. *Kenna Estate,* 348 Pa. 214, 34 A. 2d 617; *Crawford Estate,* 293 Pa. 570, 143 Atl. 214.

Decree affirmed, each party to pay own costs.

Mr. Justice ROBERTS concurs in the result.