**Zerbey Estate**

Before Charles Klein, Adm. J., Bolger, Lefever, Saylor, Shoyer & Pawelec, JJ.

BOLGER, J., June 22, 1972.—Richard S. Zerbey died on June 20, 1969, testate, leaving to survive him his estranged wife, Hannah G. Zerbey, a son, Richard S.

Zerbey, Jr., and four daughters, Betty Jean Derrico, Margot Kituskie, Katherine Cundey and Mariann Sikora. His home drawn will was dated November 3, 1969. The will provides as follows:

"I, RICHARD S. ZERBEY, SR., of the City of Philadelphia, Pennsylvania make this as and for my last Will and Testament:

"FIRST: I order and direct the payment of all my just debts and funeral expenses as soon as convenient after my death.

"SECOND:

"A. I bequeath to my son Richard Jr. all my personal effects.

"B. All the securities that I hold at the time of my death.

"C. The property at 1310—68th Avenue, Philadelphia, Pa. and all its contents. The property located at 1524 Clearview Street, Philadelphia, Pa.

"THIRD: To my wife Hannah G. Zerbey I bequeath the sum of Ten Thousand Dollars.

"FOURTH: The balance of my estate which is now in Saving and Loan Funds—in Trust Accounts for each of five children, namely; Richard Jr., Betty Jean Derrico, Margot K. Kituskie, Katherine M. Cundey and Mariann G. Sikora is to be paid to each child in accordance with the Trust Fund designated.

"FIFTH: In the event that my son Richard should predecease me I give devise and bequeath all that he would have inherited to be divided equally among the remaining children. In the event of the death of any said children the issue of such deceased child shall take his, her or their parents share. Should any child of mine die without leaving issue, his or her share shall be paid to my surviving children or their issue.

"SIXTH: I direct that all transfer inheritance and estate taxes whether State or Federal of any kind what-

soever upon my residuary estate shall be paid by my Executors out of the principal and further that all such taxes be paid as soon as may be after my death.

"I nominate, constitute and appoint my son Richard S. Zerbey, Jr. as Executor of this my last Will and Testament and I further direct that my said Executor shall serve without the filing of any bond for the faithful performance of his duty any law, usage or Statute to the contrary notwithstanding.

"In witness whereof I have hereunto set by hand and seal this fifteenth day of November 1968.

"Richard S. Zerbey

"Signed, sealed, published and declared by the above named Testator, Richard S. Zerbey Sr. as and for his last Will and Testament in our presence, who in his presence, at his request in the presence of each other, all being present at the same time, have hereunto set our hands as attesting witnesses:

"Mary H. Strakay
"Grace S. Jackson"

Probate was delayed by a caveat filed by daughters Margot Kituskie, Mariann Sikora and Betty Jean Derrico. After extensive negotiations the caveat was withdrawn pursuant to a written family agreement. Hannah Zerbey, the widow, since deceased, elected to take against the will.

The account was filed on February 22, 1971, and came on for audit on October 22, 1971. Hearings were held on that date and on October 28, 1971.

Objections to the account were entered by Rappaport & Furman, Esqs., on behalf of Margot Kituskie and Mariann G. Sikora. They are as follows:

1. That there should be stricken from the account the amounts of two tentative trusts created by testator as trustee (less one-third share to widow and inheritance taxes), in which Mariann Sikora and Margot

Kituskie were beneficiaries, and the books for which were in the possession of the beneficiaries.

2. Excessive commission and counsel fees largely because of the inclusion in the account of the two tentative trusts.

3. The charge of $3,115 counsel fee against two daughters to Rappaport & Furman, Esqs., for withdrawal of caveat to the will

4. The gift to Richard Zerbey, Jr., in paragraph Second of the will should be limited to paragraph Second A and exclude those in paragraphs Second B and C.

Richard Zerbey, Jr., the accountant and beneficiary under the will is represented by Henry R. Nixon, Esq., who filed an appearance on behalf of Richard Zerbey, Jr., as executor of the estate of Hannah Zerbey, widow of decedent.

The accountant contends that there exists a comprehensive settlement of all questions by all parties including the two presently objecting daughters. To support that position, H. Groh Schneider, Esq., who also represented the accountant, testified to correspondence between and among the parties and their counsel and to oral statements. It appears that the two objecting sisters filed a caveat against the will. After lengthy negotiations and discussions, the caveat was withdrawn, the will was probated and letters testamentary were issued by the register to Richard Zerbey, Jr., executor. The written agreement of settlement was introduced in evidence as follows:

"RE: ESTATE OF RICHARD S. ZERBEY,
DECEASED
A/K/A RICHARD S. ZERBEY, SENIOR
"We, MARGOT KITUSKIE and MARIANN G. SIKORA, daughters of RICHARD S. ZERBEY,

deceased, hereby remise and release RICHARD S. ZERBEY, JUNIOR, Executor of the Estate of RICHARD S. ZERBEY, SENIOR, from any claims, which we now have or may have in connection with the probating of the Will of Decedent dated November 15, 1968, and direct that the Caveat filed against the Probate of said Will be withdrawn.

"This Release is executed in consideration of the payment of the sum of $3115 to Rappaport & Furman, Esquires, our counsel, in full payment of costs and services rendered on behalf of the undersigned and our sister, BETTY JEAN DERRICO. Thereupon, we authorize and direct our said counsel to withdraw the Caveat filed and approve the probating of said Will.

"IN WITNESS WHEREOF we have hereunto set our hands and seals this 20th day of October, 1969.

"/s/ Margot Kituskie
"/s/ Mariann G. Sikora

"Witnessed by:
"/s/ *Joseph Rappaport*."

The fee of $3,155 was paid to Rappaport by Richard Zerbey, Jr., out of his share of the estate.

Mr. Schneider testified that this written agreement does not constitute all of the elements of the settlement in that the latter required the inclusion in the estate of the tentative trust accounts, that the gifts to Richard Zerbey, Jr., and the trust accounts would bear the proportionate share of the widow's election, death taxes and expenses of administration.

Mr. Rappaport for the objectors testified as to the caveat and its settlement. He stated that no other subjects were fully discussed and much less agreed upon by the parties. That it was not until the ac-

count was filed that he and his client learned of the claim that the tentative trusts were part of the estate, that there was no agreement at any time by him or his clients as to these items. No other writings support a comprehensive settlement except a flow of letters testified to by Mr. Schneider.

During the administration of the estate, counsel for the accountant requested the two objectors, through their counsel, to turn over the pass books of the tentative trusts. This was done and the funds withdrawn from the savings banks. Mr. Rappaport testified this was done because the savings banks would not release the funds without the signatures of the beneficiaries and of the executor, although it was his and his clients' understanding that it was done to permit the executor to withdraw the funds, to deduct widow's elective one-third share, and pay inheritance taxes, after which the balance was to be returned to the named beneficiaries.

Decedent had opened savings fund accounts in his name in trust for: Mariann G. Sikora, Margot K. Kituske, Richard S. Zerbey, Jr., Betty Jean Derrico and Katherine Cundey.

A deposit in a savings account in a bank by one person in his own name as trustee for another, standing alone, establishes a tentative trust, revocable at will, but such a trust is not revoked by a clause in a will providing generally for revocation of all prior testamentary writings where the will does not expressly revoke the trust: Pozzuto's Estate, 124 Pa. Superior Ct. 93; Towland Estate, 33 D. & C. 2d 653. In the present case (clause fourth of the will), there is a specific affirmation of testator's intent that the funds in these tentative trusts "be paid to each child in accordance with the Trust Fund designated." As stated in Rieff's Estate, 16 Pa. Superior

Ct. 80, "it . . . was highly important to refer directly and specifically to the designation *and to annul it* if that fund was intended to be made a part of his general estate. . . " (Italics supplied.) Therefore, these funds pass to the designated donees unless the agreement entered relative to the caveat requires their inclusion in the general estate.

The written agreement, which is quoted above, is signed only by the two objecting daughters and releases their claims, if any, which they might have in connection with the probating of the will. Nothing is said concerning the trust accounts and counsel for the objectors maintain that the agreement pertained only to the caveat whereas the accountant relies upon a series of letters between counsel relative to the trust accounts. Mr. Schneider testified that the negotiation contemplated the inclusion of the trust funds which were to bear a proportion of the expenses of the estate and that was the basis for the payment of the $3,115 counsel fee to Rappaport & Furman, Esqs. The latter contend that neither they nor their clients agreed to such a proposition.

The alleged oral agreement cannot be accepted as the basis for changing the clear import of the written agreement. There is no clear evidence that the clients concurred in any other decision of their attorneys and, therefore, they would not be bound thereby: Braunschweiger's Estate, 322 Pa. 394, 398; Philadelphia v. Schofield, 375 Pa. 554. Reference is made to the fact that in Clause Fifth, testator provided for a disposition in the event of the death of his children and that coupled with the phrase in Clause Fourth, "the balance of my estate" shows an intent to revoke the tentative trust. As stated above, Clause Fourth is not a revocation but an affirmation of the trust and Clause Fifth refers to the distribution of the

legacies and devise to the son, Richard. In the event of the latter's death, his legacies and devise is payable to testator's other children or their issue. Accordingly, I find that the written agreement pertains only to the withdrawal of the caveat and cannot be construed to include any other alleged agreement; therefore, the funds in the trust accounts, subject to the widow's share and inheritance taxes, should be stricken from the account and forwarded to the objectors. Counsel on his appearance slip requests that page 1 of the account be amended as follows: Saving Fund Society of Germantown, $9,524.32 vice $10,000 and Olney Federal Savings & Loan Association, $10,000 vice $9,524.32.

Decedent's will, although a "homemade" one, was carefully planned. In separate numbered paragraphs he referred respectively to his wife, his son, and in another (the one involving the tentative trusts) to each of his children. All members of his family, including his estranged wife, are identified and though the will is handmade, it is a natural will. In Williams v. McCarroll, 374 Pa. 281, the court stated: " '. . . it is important to examine the disputed document itself to ascertain whether the testamentary scheme is natural and reasonable and in harmony with the family background . . ."

The objectors contend that there are no dispositive provisions with respect to the items of property in subsections B & C of Clause Second and because there is no residuary clause, intestacy results. With this, I cannot agree. The mere fact that subsection A ended with a period rather than a comma or semi-colon cannot subvert the plain meaning of Clause Second. If such a conclusion were to be drawn, then testator's careful delineation of his will into Clauses First through Sixth

would be nullified. A construction which renders any of the words nugatory and futile must be rejected: Vandergrift Estate, 406 Pa. 14. Consequently, I find that Clause Second subsections A, B and C must be construed as an entirety and that decedent intended that the items under B and C pass to his son, Richard.

An objection was raised with respect to the counsel fees claimed in this estate on the ground that they were excessive. It is apparent that the fee of $6,300 for ordinary services was predicated on the assumption that the other trusts were includible in the estate. Because of my foregoing determination, excluding such assets, the fee must necessarily be reduced, and I direct that the fee for ordinary services be reduced to $5,300. Insofar as extraordinary services were concerned, an objection has been raised that such were for the benefit of Richard Zerbey, Jr., and not for the estate. It is interesting to note that counsel for the objectors received $3,115 for services which were for the benefit of the objectors and came from the personal funds of Richard Zerbey, Jr.

Insofar as concerns the fees claimed for extraordinary services, they were as much for the benefit of the estate as the individual and based on the testimony with respect to the negotiations surrounding the caveat and the purported family settlement, I find them to be excessive and direct that they be reduced to $2,500 and, as reduced, to be charged as an administation expense.

Executor's commissions are also excessive, and I direct that they be reduced to $4,500.

The account shows a balance
of principal personalty of                 $81,878.13
and a balance of principal realty of     11,000.00

and a balance of income of 3,452.91
making a combined total of $96,331.04
which, composed as indicated, subject to the elimination of the trust accounts above mentioned and the adjustments to the claimed counsel fees and executor's commissions, subject also to such Pennsylvania inheritance tax found due and assessed, and such distribution heretofore properly made is awarded in accordance with the statement of proposed distribution.

Leave is hereby granted to the accountant to make all necessary transfers and assignments.

A schedule of distribution, in duplicate, duly certified by counsel to be correct and in conformity with this adjudication and, if distribution is to be made in kind, approved by all parties in interest therein, shall within 90 days after the absolute confirmation of this account be submitted by the accountant to the auditing judge. The schedule, when approved by him and hereto annexed, will form part hereof.

And now, June 22, 1972, the account is confirmed nisi.

*Harry R. Nixon*, for the accountant.

*Jerome E. Furman* and *Joseph Rappaport*, for Margot K. Kituskie and Mariann G. Sikora, daughters, heirs at law and legatees.

*Herbert Fineman*, for Commonwealth.

## SUR EXCEPTIONS TO ADJUDICATION

SHOYER, J., December 18, 1972.—The major exceptions filed by the executor-beneficiary complain of the refusal by the auditing judge to apply the proceeds of two tentative trusts to the funeral and administration expenses of testator's estate. One trust in the amount of $9,524.32 named testator's daughter, Margot Kituskie, as beneficiary; the other trust in the amount of $9,476.17 named another

daughter, Mariann G. Sikora as beneficiary. We are satisfied that the rulings by Judge Bolger, the learned auditing judge, were correct, and these exceptions must be dismissed.

After a careful and thorough review of the testimony and correspondence introduced at the audit, Judge Bolger concluded that there was no "clear evidence" that these two daughters had ever concurred in the family agreement alleged to have been made between their counsel and the three other children of testator. Apparently, a family agreement did exist with these other children who have all permitted their respective tentative trusts to be applied toward payment of the cost of the funeral, the death taxes and the general administration expenses. Counsel for Margot and Mariann made no agreement in writing, and the release signed by these two daughters does not extend to matters beyond the withdrawal of their caveat. It is both fundamental and axiomatic that agreements between counsel as to the business of the court should be in writing;* otherwise the time of the court may be wasted in clearing a path through innumerable collateral issues. Here, the learned auditing judge held two extended hearings in which he gave the accountant-beneficiary full opportunity to prove through introduction of various letters the alleged concurrence in the family agreement by counsel for Margot and Mariann. We do not doubt the correctness of the court's finding that there was no concurrence. Further, approval by Margot and Mariann of the alleged family agreement, a necessary element to give it legal vitality, is completely absent. As stated

---

* Compare Rule 201 of the Pennsylvania Rules of Civil Procedure.

by our Supreme Court in Philadelphia v. Schofield, 375 Pa. 554, 559 (1954):

". . . while an attorney has implied authority to make agreements and stipulations with respect to purely procedural matters during the regular course of litigation . . . he has no such authority to enter into agreements which involve a waiver of any of his client's substantial rights or the imposition upon him of new liabilities or burdens. . . ."

Exceptant also contends that the estate assets were insufficient to pay the pecuniary legacy of $10,000 to the widow, the debts and funeral expenses mandated in the will, plus the expenses of administration. Citing Schuck Estate, 419 Pa. 466 (1965); Rodgers Estate, 374 Pa. 246 (1953); and Pozzuto's Estate, 124 Pa. Superior Ct. 93 (1936), it is argued that paragraph Fifth of the will was inserted to bring these seven tentative trusts into the residuary estate. These cases are all distinguishable on their facts. We agree with the learned auditing judge that the will expressly *affirmed* and did not disaffirm these trusts. Further, if the will should be construed to make these trusts part of the testamentary estate, they would preserve their identity as *specific* legacies and not become part of the residuary estate. As specific legacies to testator's children they would not abate until the gift of the stocks, inventoried at $33,087.50, had first been consumed. The statutory order of abatement as directed by section 3541(a) of the Probate, Estates and Fiduciaries Code of July 1, 1972, No. 164, 20 PS §3541, et seq., formerly section 751 of the Fiduciaries Act of 1947, places testator's gift to the accountant-beneficiary of " [a]ll the securities that I hold at the time of my death" in classification (4) as follows:

"§3541. Order of abatement.

"(a) General Rules.—Except as otherwise provided by the will, if the assets are insufficient to pay all claimants and distributees in full, the shares of distributees, without distinction between real and personal estate, shall have priority of distribution in the following order:

"(1) Property specifically devised or bequeathed to or for the benefit of the surviving spouse.

"(2) Property specifically devised or bequeathed to or for the benefit of the decedent's issue.

"(3) Property specifically devised or bequeathed to or for the benefit of other distributees.

"(4) Property disposed of by will in the form of a general bequest of cash, stocks or bonds.

"(5) Property disposed of by general devise or bequest and not included in a residuary clause.

"(6) Property devised or bequeathed in a residuary clause.

"(7) Property not disposed of by the will."

Although our appellate courts have cited section 58 of the Restatement 2d, Trusts, with approval (Rodgers Estate, supra, page 58), it is inapplicable to the present factual situation. Section 58d of the Restatement provides that if a tentative trust "is needed it can be applied to the payment of [decedent's] funeral expenses and the expenses of the administration of his estate, *if he has not sufficient other property* which can be applied for these purposes." (Italics supplied.) Here, the account shows the legacy in stocks to be worth $33,087.50, whereas total disbursements came to only $26,321.26. Since testator left "sufficient other property," there is no need to require contribution from the tentative trusts. Furthermore, we consider it of no significance that these saving books were in testator's safe deposit box rather than in the possession of Margot and Mari-

ann as inferred by the auditing judge in his adjudication. The daughters had voluntarily delivered their signed withdrawal slips to the executor.

At the request of Margot and Mariann, the learned auditing judge reduced the counsel fee stated in the account for ordinary services by $1,000 and the counsel fee for extraordinary services by $800. Executor's commissions were also deemed to be excessive and these were reduced by $1,250. In resisting this reduction the executor-beneficiary explains that counsel for the accountant was obligated to advise as to the full amount of the estate, including the Totten trusts, and should receive remuneration for the same. As to the reduction in the claimed compensation for extraordinary services, it is asserted that this amounts to a double reduction because the extraordinary expenses were incurred by representing the executor in the probate proceedings and in negotiating the family settlement and should not also be reduced.

We approach this problem in the light of what was said by our Supreme Court in Thompson Estate, 426 Pa. 270, 281 (1967):

". . . It is a 'well entrenched rule of law in this State that the responsibility for determining the amount of counsel fees rests primarily with the auditing judge.' *Mosicant Estate,* 16 Pa. D. & C. 2d 66 (1959), *Bickel Appeal,* 388 Pa. 270, 130 A. 2d 498 (1957) affirms this: 'In Good's Estate, 150 Pa. 307, 310, this Court stated: "The amount of fees to be allowed to counsel, always a subject of delicacy if not difficulty, is one peculiarly within the discretion of the court of first instance. Its opportunities of judging the exact amount of labor, skill and responsibility involved, as well as its knowledge of the rate of professional compensation usual at the time and place, are necessarily greater than ours, and

its judgment should not be interefered with except for plain error. . ." Both Good's Estate and Rambo's Estate, 327 Pa. 258, 266, 193 A. 1, of similar import, have been cited with approval in Harton's Estate, 331 Pa. 507, 523, 1 A. 2d 292; Berkowitz's Estate (No. 2), 344 Pa. 485, 486, 26 A. 2d 295; Davidson's Estate, 334 Pa. 389, 395, 6 A. 2d 73; and Lare Estate, 368 Pa. 570, 84 A. 2d 334. In Rambo's Estate, supra, we said: "This court has frequently held that the allowance or disallowance of counsel fees rests generally in the judgment of the court of the first instance and its decision will not be interfered with except for palpable error:" . . . .' (pp. 276, 277)."

The learned auditing judge reduced the fee for ordinary services because it was obvious that counsel had based this charge on the assumption that the tentative trusts were includable in the estate. Because the learned auditing judge had properly determined that there was no family agreement to bring in the tentative trusts of these two daughters with the other testamentary assets, the court reduced the fee for these services to $5,300 which brought the figure appropriately in line. For the same reason, compensation to the executor was reduced to $4,500. In arriving at this figure Judge Bolger was guided by the rule which evolved in Anderson Estate, 77 D. & C. 74 (1951). It is there held that a commission of five percent on personal property and one percent on realty specifically devised which is either in the possession of the devisee at the time of testator's death or is surrendered to the devisee shortly thereafter is "prima facie a fair and reasonable compensation": Wallis Estate, 421 Pa. 104, 111 (1966). These reasons of the learned auditing judge "fairly warranted the reduction[s]" and we will not dis-

turb them: Moore's Estate (No. 1) 228 Pa. 516, 523 (1910).

In considering the additional fee claimed for extraordinary services, we have carefully reviewed the notes of testimony. By her written statement to Mr. Schneider, it is clear that the widow was of the opinion that the caveat had been filed by Margot and Mariann in order to put pressure on her to express her dissatisfaction with her husband's will, elect to take against it and thus increase her own estate which they might inherit. In the course of his testimony before the learned auditing judge, Mr. Rappaport, counsel for these two daughters, admitted that he was "particularly impressed" by the small size of the widow's legacy.

In his adjudication, Judge Bolger observed, "It is interesting to note that counsel for the objectors received $3,115 for services which were for the benefit of the objectors, and came from the personal funds of Richard Zerbey, Jr." We recognize that of all the parties concerned, Richard Zerbey, Jr., had most to gain by the probate of the will. Nevertheless, the record shows that his mother and his other two sisters, Betty Jean and Catherine, stood with him in seeking to have testator's will probated. There was additional work required of counsel in order to have the caveat withdrawn. We all approve of the action of the learned auditing judge in allowing extra compensation. Individually, any one of us sitting in his stead as auditing judge, might have lowered or raised his figure. Judge Bolger, however, was exposed to the atmosphere of the hearings, and is in the best position to judge the temper of the case. His reduction of $800 in extra counsel fee shows no abuse of discretion and we will not disturb it.

We are aware that the only parties who have complained, Margot and Mariann, are not affected by these administration expenses and will gain nothing by these reductions. As stated in Thompson, supra, page 276, however, this court has "both the power and the duty *on its own motion* to pass upon the reasonableness of the compensation claimed. . . It was clearly within the competence of the orphans' court to determine the reasonableness of the compensation to be awarded the appellant-trustee and his counsel."

For the reasons above set forth, the exceptions of the executor-beneficiary are dismissed and the adjudication is confirmed absolutely.