## Smullen Estate

 Before Pawelec, A. J., Guto-
wicz, Silverstein, Klein and Shoyer, JJ.

*Francis E. Gleeson, Jr.,* as accountant.

*Joseph E. Greene, Jr.,* for Ruth Magee, Bruce Magee, and William Magee, Jr.

*Francis X. Buschman, Jr.,* for Florence W. Schoepp and John C. Schoepp.

*Joseph F. Tilghman, Jr.,* for American Oncologic Hospital.

*Lawrence Barth,* for Commonwealth as parens patriae.

*Dennis P. Green,* for Commonwealth re inheritance tax.

ADJUDICATION BY GUTOWICZ, J., JANUARY 28, 1980:

This decedent died July 17, 1977, leaving a will dated May 7, 1975, which was duly probated. He was unmarried at the time of his death and left no issue. * * *

The accountant is a member of the bar and served as both executor and counsel to the executor in this matter. In his account, he has charged the sum of $3,766.54 for his services as executor and another $3,766.54 for his services as counsel. These sums are stated to be five percent, each, of the "total assets," including: The premises 4333 Teesdale Street, specifically devised to Florence and John Schoepp and sold, at their request, for $20,601; the sum of $6,180, being the aforesaid gain on conversion of the gun collection; and the sum of

$23,512.50, being the sum on deposit in the aforesaid jointly held bank account.

The attorney general, as parens patriae for charities, Florence Schoepp, John Schoepp, Bruce Magee, William Magee, Jr., and Ruth Magee have appeared, by their respective counsel, to raise the following objections to the account, to wit: The fees taken by the accountant are excessive insofar as they are based upon the gain on conversion of the gun collection and the proceeds of the jointly held bank account; as executor, the accountant should receive a commission of not more than one percent to three percent of the value of the specifically devised real estate, plus, five percent of the inventory value of the remaining assets; and as counsel, he should receive a fee of not more than one percent to three percent of the value of the specifically devised real estate, plus, five percent to seven percent of the inventory value of the remaining assets.

In his statement of proposed distribution, the accountant has posed the following questions for adjudication, to wit: How should the expenses of the estate be apportioned among the heirs; how should the assets be apportioned among the heirs; and, how much of a refund of the Pennsylvania transfer inheritance tax will the estate be able to obtain?

If the assets of the estate are sufficient to pay all claimants and distributees in full, it follows: That the general estate bears all expenses of administration, including the executor's commission and counsel fee; that specific devisees bear the expenses of converting their real estate; and, that the residue bears all inheritance tax attributable to pre-residuary bequests and devises. See *Anderson Est.*, 1 FIDUC. REP. 449 and Section 718 of the Inheritance and Estate Tax Act of 1961 (72 P.S. Sec. 2485-718). Where, however, the assets of the estate are insufficient to pay all claimants and distributees in full: The general estate still must bear the expenses of administration; the specific devisees still must bear the expenses of converting their real estate; but each legatee and devisee must bear his or her equitable and proportionate share of the inheritance tax. See *Tose Est.*, 22 FIDUC. REP. 282. And, if the assets of the estate are insufficient to pay all claimants and distributees

in full, Section 3541 of the Probate, Estates and Fiduciaries Code (20 Pa. C.S.A. Sec. 3541) prescribes the following order of priority in distribution, to wit: Property specifically devised or bequeathed to or for the benefit of distributees other than the surviving spouse, or the decedent's issue, here, premises 4333 Teesdale Street, the pie crust table and the contents of the house at 4333 Teesdale Street (the term "contents" being exclusive of the gun collection), enjoys first priority; property disposed of by will in the form of a general bequest of cash, here some $26,000 in such bequests, must be satisfied next; then, property disposed of by general bequest and not included in a residuary clause, none such here, must be paid; and, finally, property devised or bequeathed in a residuary clause, here, the proceeds of sale of the gun collection, among other assets, enjoys last priority.

In determining the objections to commissions and fees, we adhere to the principles recited by our Administrative Judge Pawelec in *Strand Est.*, 3 D. & C. 3d 457, at 459-60, to wit:

> "It is well settled that a fiduciary is entitled to 'fair and just' compensation. What is 'fair and just' depends upon the extent and character of the labor and responsibilities involved: (citations omitted) Counsel fees are also compensation for services rendered. In LaRocca Estate, 431 Pa. 542, 246 A.2d 337 (1968), the Supreme Court, in setting forth the factors to be considered in determining the compensation of the attorney for the estate, stated, at page 546:
>
> 'The facts and factors to be taken into consideration in determining the fee or compensation payable to an attorney include: the amount of work performed; the character of the services rendered; the difficulty of the problems involved; the importance of the litigation; the amount of money or value of the property in question; the degree of responsibility incurred; whether the fund involved was 'created' by the attorney; the professional skill and standing of the attorney in his profession; the results he was able to obtain; the ability of the client to pay a reasonable fee for the services rendered; and, very importantly, the amount of money or the value of the property in question.' "

In the matter of the bank account held by the testator and his sister, Florence Schoepp, as joint tenants with the right of survivorship, it appears from the testimony offered in support of the commission and fee taken that the executor did not learn of the existence of this account until two months after

letters had been granted to him; that he never exercised control over it; that he never considered it as belonging to the estate, as opposed to the surviving joint tenant; that he did not pay inheritance tax on it; and, that his chief work in connection with it consisted of advising the heirs under the will why they could not share in it. This court concludes that such "work" is not worthy of an executor's commission nor is it worthy of a counsel fee, and, to the extent that the commission and fee in question are based upon the said joint bank account, they are disallowed. See *Zerbey Est.*, 23 FIDUC. REP. 92. The accountant will be surcharged accordingly.

The objectants have suggested that the executor's commission and counsel fee allowed for administration of the gun collection should be calculated only upon its inventoried value, *i.e.*, $10,645. It has been held that:

> " * * * Where compensation is assessed as a percentage of total assets administered, the rule, as we have applied it and as customarily applied in the orphans' courts throughout the State, is to allow commissions on the appraised value of the corpus at the time when it reaches the hands of the executor or administrator. This is the value of the assets actually administered. Subsequent accretions should not increase the allowance of compensation, nor losses reduce it, unless exceptional circumstances in fairness require that this be done: (citations omitted)." *Gardner's Estate*, 323 Pa. 229, 239 (1936).

The accountant testified that the gun collection was the subject of a written agreement among the legatees of the contents of the house whereby it would be sold and the proceeds divided evenly between them. The gun collection was comprised of more than 130 guns, swords and like articles, together with ammunition for the former. The accountant spent many hours in arranging the appraisal, storage, viewing and sale of the gun collection, all of which occurred within four months of the testator's death. The huge gain on the conversion, being $6,180, leads this court to conclude that the value placed on the gun collection in the inventory cannot be correct, or, that the accountant's administration of this asset was so skillful that, in fairness, the gain must be recognized in calculating the executor's commission and counsel fee. The accountant will be allowed an executor's commission of five percent of $16,825 and a counsel fee of five percent of $16,825 for

his services in this connection. To this extent, the objections are dismissed.

The court can find no evidence of services performed or work done by the accountant which would justify an executor's commission in excess of one percent or a counsel fee in excess of three percent of the inventoried value of the specifically devised real estate. The testator's house had been vacant for an indeterminate period prior to his death, on July 17, 1977 and remained vacant until settlement was held on its sale, on January 5, 1978. Shortly after the testator's death, the specific devisees retained the accountant's services, as a licensed real estate broker, to sell the premises on their behalf. He did so and charged them six percent of the sales price as a commission for his services in this capacity. He could not recall how many times he visited the premises nor how many hours he spent there in his capacities as executor and counsel to the executor. He could not say in which capacity he prepared the deed for settlement. He kept copies of the agreement of sale in his real estate broker's file, as opposed to his file as counsel to the executor. This court is of the opinion that the accountant spent considerably more time dealing with the specifically devised real estate in his capacity as real estate broker for the devisees than he did in his capacities as executor and counsel to the executor. The extent and character of the labor and responsibilities involved in administering this real estate as part of the decedent's estate do not merit an executor's commission in excess of one percent (See *Anderson's Estate, supra*), nor do they merit a counsel fee in excess of three percent, of the inventoried value of the premises. Therefore, to the extent that the commission and fee claimed exceed one percent and three percent, respectively, of the inventoried value of the specifically devised real estate, to wit, $206 and $618, they are disallowed. The accountant will be surcharged accordingly.

The remaining assets of the estate, carried in the account at a value of $14,452, consist of: $12,833.39 on deposit in a bank savings account; the pie crust table valued at $50; the Social Security lump sum death benefit of $255; and $1,313.61 in refunds due the decedent from various sources, such as

Medicare, Blue Shield, the Commonwealth's property tax rebate program and Morris Manor Nursing Home. The account contains credits of five percent, each, for executor's commission and counsel fee on these assets. At the hearing on the objections to the account, the accountant demanded seven percent for his services in each capacity. However, his testimony and a review of the assets of the estate reveal no unusual problems nor any extraordinary services performed in administering these assets. Determining the priority of distribution of available assets and the proper apportionment of the inheritance tax in this estate should not be overly difficult tasks. While the accountant gives estimates of up to 160 hours devoted to the administration of the entire estate, he kept no time sheets nor other records of the time spent. Under such circumstances, the court feels that the commission and counsel fees taken in the account, to wit, five percent for services performed in each capacity, is reasonable and no more will be allowed. * * *

OPINION BY SILVERSTEIN, J., FOR COURT EN BANC,

JANUARY 20, 1981:

This matter is before the court on the exceptions filed by the executor/attorney of the estate of Harry Watson Smullen, a/k/a Harry W. Smullen, who died testate on July 17, 1977. Francis E. Gleeson, Jr., a member of the bar, complains that the auditing judge erred in disallowing and in other instances in reducing his executor's commissions and attorney fees claimed. In his account, he charged the sum of $3,766.54 as executor's commissions and $3,766.54 for his services as counsel.

At the audit the Attorney General of the Commonwealth of Pennsylvania, as parens patriae, and several of the legatees objected to the amount of the commissions and fees. These objections covered several grounds, viz., that commissions should not be allowed on the gain between inventory value and sales price of a certain gun collection; that the commissions on specifically devised real estate should be limited to not more than 3% of the value of said real estate and attorney fees should be so restricted; commissions on the balance of the estate should not be more than 5% of the value and attorney

fees should be limited to between 5% and 7% on these same assets.

After a hearing, the auditing judge determined that the fees and commissions charged with respect to the gun collection were proper and dismissed the objections thereto. In connection with the specifically devised real estate, the learned auditing judge determined that the devisees employed the accountant as a licensed real estate broker, to sell the premises on their behalf and, in that capacity, he charged and collected a 6% commission on the sale of the real estate. Accordingly, the learned auditing judge concluded that a 1% commission and a 3% attorney fee was proper under these circumstances. With respect to the other assets, the auditing judge determined that the nature of such assets and the services rendered were not unusual nor extraordinary and, consequently, determined that a 5% commission and a 5% fee were reasonable. The accountant was surcharged for the differences resulting from the above determinations.

Of the five exceptions taken, four referred to the auditing judge's failure to award the commissions and fees originally claimed by the executor/attorney. The fifth relates to the auditing judge's failure to order the specific devisees to pay into the estate their proportionate share of the commissions and fees on the inherited premises.

At the time of the argument before the court en banc, he added another exception in the form of a question, asking whether an agreement among the heirs, to divide equally, the proceeds of the sale of the gun collection was valid.

The exceptant's brief and argument thereon were bereft of any citation of statute or case law and consisted primarily of his recitation of what he believed other attorneys were charging in the way of fees.

Section 3537 of the Probate, Estates and Fiduciaries Code directs that the court shall allow such compensation to the personal representative as shall under the circumstances be reasonable and just. The determination as to the amount of compensation which is "reasonable and just" is vested in the sound discretion of the orphans' court: *Browarsky Est.*, 437 Pa. 282; *Lohm Est.*, 440 Pa. 268.

Thus, the question of the allowance of counsel fees and executor's commissions is peculiarly a matter for the exercise of discretion by the auditing judge who heard and saw the witnesses.

This court can only reverse the auditing judge where it appears that the latter has abused his discretion: *LaRocca Est.*, 431 Pa. 542. We see no such abuse of discretion in this case.

Counsel has relied heavily upon the work entailed and the success he had in disposing of the gun collection. The learned auditing judge took this into consideration when he allowed a fee on the sales price rather than on the inventory value stating (at page 7 of the adjudication) : "The huge gain on the conversion, being $6,180, leads this court to conclude that the value placed on the gun collection in the inventory cannot be correct, or, that the accountant's administration of this asset was so skillful that, in fairness, the gain must be recognized in calculating the executor's commission and counsel fee."

With respect to the real estate, the auditing judge found that the attorney had kept no time records nor could he make any allocations between the duties of a real estate salesman and executor of the estate. He, consequently, allowed an executor's commission of 1% and a counsel fee of 3% of the inventory value thereof.

Insofar as a certain joint bank account is concerned, the learned auditing judge found that the attorney had performed no work in connection therewith, either as executor or attorney, and disallowed any commission and fee claimed based upon that account. Under the circumstances, it would be manifestly unfair to permit fees and commissions on an asset that was never a part of the estate and was not administered as such.

The exceptant contends that the auditing judge failed to order the specific devisees to pay into the estate their proportionate share of the commissions and fees on the inherited premises. His attention is drawn to Orphans' Court Rule 71(b), wherein it is stated: "Except where otherwise provided by a rule adopted by the Supreme Court or by an Act of Assembly, any distribution made by a fiduciary shall be made

at his own risk unless directed by an adjudication, decree of distribution or order of the court." Having failed to provide for the payment and allocation of commissions and fees from the proceeds of the sale of real estate, he cannot now be heard to complain.

The final exception, which he brought before the court and one not part of his original exceptions, has to do with the agreement of the parties with respect to the gun collection.

The executor has no financial stake in the distribution of the proceeds of the sale of the gun collection. None of the parties in interest in this estate has raised any objection with respect thereto and, assuming arguendo, that they had agreed to divide the proceeds equally, any such agreement can be considered to be waived by their failure to file exceptions thereto. Certainly, the executor cannot be heard to object.

Accordingly, the exceptions to the adjudication are dismissed.