**Shaw v. Bradley**

C.P. of Blair County, no. 1563 C.P. 1992.

*Regis McClelland,* for plaintiff.
*Frank J. Stanek* and *Anthony Zanoni,* for defendant Vernon F. Bradley.
*Robert J. Pfaff,* for defendant Altoona Hospital.

CARPENTER, *J.,* March 2, 1995—This matter comes before the court on petition to compromise the action of a minor. By our previous orders, all issues relative to the settlement are resolved with the exception of the request for attorney's fees. Counsel have requested a fee in this matter of 35 percent of the present value of the settlement or a total fee of $376,000. They have also requested costs (out of pocket expenses) in the amount of $14,711.68. We have reviewed the file in considerable detail. We have attempted to evaluate the value of counsel's services consistent with the criteria set forth in the case of *LaRocca Estate,* 431 Pa. 542, 246 A.2d 337 (1968). It is our belief upon our review that a fee in the amount of 25 percent is appropriate in this matter which translates into a fee of $268,750 together with expenses for a total award of $283,461.68. There are two important considerations. First, in award-

for the services which they have rendered. Second, the court is required under Rule 2039 to protect the interest of minor plaintiffs and preclude windfall benefits to counsel at their expense. We search for a fee that is fair but not excessive.

We note in this matter that counsel themselves reduced their contingency contract of 40 percent to 35 percent when the same was brought before this court. However, our review indicates that a further reduction is necessary. We cannot permit any portion of the fee which we view as excessive under the *LaRocca* criteria to be paid to the unfair detriment of this minor. In reviewing this, we have applied the *LaRocca Estate* criteria as follows:

(1) *The amount of work performed.* We have requested from counsel a breakdown of hours. We understand that this case is on a contingent fee. However, the amount of hours performed is certainly relevant. Having totaled counsel's hours in this matter we reach a figure of 667.5 hours. Upon further analysis, however, even the most cursory review indicates a total of at least 220 hours of this total which were not related to significant legal work but rather to staff/copying/and to travel. It appears that a figure of approximately 440 hours more accurately (and generously) reflects the actual legal involvement by attorneys.

(2) *The character of the services rendered.* This was a medical malpractice action which is generally considered to be litigation of a complex nature.

(3) *The difficulty of the problems involved.* Even the most casual review of the expert reports indicates the gravity of the problems that this child experienced with her birth. The five experts contacted by plaintiff, whose reports we have read, are unequivocal as to the negligence involved. We do not perceive this as a difficult

case in which to establish either liability or damages. Our belief is confirmed by the fact that without appearing in court on any matter the defendant hospital tendered their policy limits in this case and it went to the CAT fund. This case was settled entirely through the discovery process. The court was never involved. Even the *Connor* type objections filed were decided on briefs with oral argument being waived. The court never became involved in the actual settlement process until the matter was already in the hands of the CAT fund when the court assisted in May 1994 relative to setting up the trust.

There is no basis for a conclusion that this case involved unusual issues or an unusual degree of difficulty in obtaining the policy limits to reach the CAT fund. This case proceeded smoothly to settlement through the CAT fund from all indicia that we are able to ascertain. Thirteen depositions were taken. None of these involved any of plaintiffs' experts who were involved only by their reports. The depositions were primarily treating physicians and the nurses at the hospital as well as minor plaintiff's mother and grandmother.

(4) *The importance of the litigation.* The litigation in this matter is extremely important as it appears that this child will never be able to achieve any significant economic potential in her own right. This same importance, however, also mandates a thorough review of the counsel fees since this fund is all that we can expect that this child will ever have to support herself and not be a burden on her family or society.

(5) *The amount of money or value of the property in question.* The settlement is significant. However, it involves the tendering of policy limits by the Altoona Hospital and the involvement of the CAT fund so that in no sense could we say that the fund involved was

entirely created by counsel. In fact, a tender of policy limits by the hospital long before this case would have reached trial bespeaks not only a competent performance by counsel in terms of obtaining expert witnesses but the underlying strength of the case. This justifies the substantial fee we are awarding but not more in our judgment.

(6) *The professional skill and standing of the attorney in his profession.* This attorney, albeit youthful, appears to be an attorney of good standing within his firm and while his relative inexperience was obvious in terms of setting up the trust matters attendant to this recovery we have no particular reason to question his expertise or his effort.

(7) *The ability of the client to pay a reasonable fee for the services rendered.* Again, the client has the ability to pay a fee but due to the fact that this probably represents the lifetime earnings of this plaintiff we are especially cognizant of our duty to draw the line somewhere with respect to what is reasonable.

We have already reviewed the result that was obtained and the amount of money or value of the property in question. We do not intend to comment further as to those particulars.

Plaintiff's counsel is from Allegheny County. In our county, in those matters brought before the court for fee approval, a fee of 35 percent would be in excess of what has generally been awarded in cases that have not gone through trial and that attendant risk. Generally, in our experience, cases of a similar nature generate fees far below the request of 35 percent. In fact in this regard we would reassure counsel that this court can cite to other settlement cases in this county including settlements in excess of $1,000,000, where percentages of *less than 20 percent* were awarded. We add this

so that counsel can understand that fees are routinely reduced in this county where minor plaintiffs are involved. The large percentage applied to the settlement amount in this case creates what we view as a windfall.

We are aware that there were three attorneys involved. However, their referral of the case and lack of truly significant contact with the case in terms of settling it does not justify more than the very substantial fee we are awarding.

We are also aware that the guardian in this case (the grandmother) has consented to the fee. Again, this is not dispositive of our duty. The responsibility for the fee is ultimately ours or Rule 2039 would not exist.

The fee that we have awarded in this case is significant by any standard for one case given the time and risk involved. Realizing that petitioning counsel is not from this jurisdiction we hasten to add that this reduction is not an indictment of him, his firm's or his expertise in any way. We believe it is appropriate, however, and represents a faithful discharge of our duty under Rule 2039.

Accordingly,

ORDER

Now, March 2, 1995, it is ordered, directed and decreed that attorney's fees in the amount of 25 percent are awarded as reasonable in this case together with $14,711.68 in costs. Accordingly, the amount of $283,461.68 is to be paid by Mellon Bank out of the trust fund managed by David P. Kenney to Regis McClelland and the law firm of Harrington Schweers Dattilo and McClelland.