WILLIAMSON, J.,
This matter is currently before the court on the executrix’s petition for adjudication/statement of proposed distribution filed on October 17, 2014. This court had previously heard testimony on March 21, 2014 concerning decedent, Miriam Haffner’s Will, election to take marital interest against the will, petition to remove executor and trustee, and petition for partition. Those matters were resolved by a stipulation of the parties and motion to discontinue filed April 9, 2014 and confirmed by order of this court filed April 11, 2014. Said order left open the right of the parties to request a hearing and approval of a full and final accounting. We will treat this as a request for approval of accounting, with objections of beneficiaries.
The executrix requested a hearing to confirm the final accounting and proposed distribution, and to determine *243 the charitable interests for the bequest the decedent made in her codicil. A hearing thereon was scheduled and conducted on January 8, 2015. The executrix provided notice to all parties, including the Commonwealth of Pennsylvania, by the office of attorney general, since there is a charitable interest in this estate. Jeannie Jennings, a beneficiary of the estate filed a list of her concerns on November 14,2014.
The executrix, Karen Anthony, and her counsel, Connie Merwine, Esquire attended the hearing, along with Max J. Haffner, Jeannie Jennings and Deanna Lyles, who were the children of the decedent and beneficiaries of the estate. Jeannie Jennings is also named as co-trustee with Karen Anthony, of any charitable trust created by the decedent’s codicil. Karen Anthony is also a child of decedent and beneficiary of the estate. David Haffner, a child of decedent and beneficiary was not present despite notice given. Max F. Haffner, decedent’s husband and a beneficiary also was not present despite notice given. No one from the office of attorney general appeared either despite notice given.
BACKGROUND
The decedent Miriam Haffner died on December 27, 2012. She left to survive her, the above named children and a husband, Max F. Haffner. She had a will dated February 13, 2012, in which her estate was to be divided as follows:
1. Real property at 3162 Overlook Drive, Saylorsburg, Chestnuthill Township, Pennsylvania equally to Max F. Haffner (50%) and her children Karen Anthony, Max J. Haffner, Deanna Lyles, David Haffner, and Jeannie Jennings (50%).
2. The residuary of the estate to her five (5) children named above.
*244 The decedent then executed a handwritten codicil, on December 10, 2012 in which she left one half of her mesothelioma litigation proceeds to a charitable trust with the remaining one-half of the proceeds to go into her residuary estate. The decedent appointed Karen Anthony and Jeannie Jennings as co-trustees of any charitable trust and they both signed as witnesses to the codicil. It was acknowledged at time of hearing that Max F. Haffner had a loss of consortium claim as part of the mesothelioma litigation.
The parties resolved all issues with Max F. Haffner by the stipulation entered of record with the court, including his interest in the mesothelioma litigation. Pursuant to the stipulation, Max F. Haffner was to receive the Brodheadsville, Pennsylvania property, $50,000 from the estate’s share of the mesothelioma funds, and the Chevrolet Corvette. The five children are to equally split the remaining residuary estate, which includes the Kunlcletown, Pennsylvania property (previously titled into Karen Anthony’s name), the remaining portion of one-half the mesothelioma proceeds (with the other one-half going to a charitable trust), and personal property. The stipulation of the parties requires Karen Anthony to list the Kunkletown property for sale (she has) and that Jeannie Jennings receive the first $20,000 from the sale (less expenses needed to correct any repair deficiencies) for work she had done to the basement.
At hearing, the beneficiaries raised the following issues:
1. The amount of the executrix’s commission;
2. The amount and/or substance of the attorney’s fees charged to the estate;
3. The family exemption being split between David *245 Haffner and Jeannie Jennings;
4. The charities to receive the mesothelioma litigation proceeds;
5. Taxes being paid from the estate on joint accounts or non-probate assets;
6. The amount of the deductions to Jeannie Jennings’ share of the house proceeds when sold;
7. Deeding the Kunkletown property to all five (5) beneficiaries;
8. Distribution of personal property.
Some of the issues were narrowed down and resolved at the time of hearing, and others must be resolved by this court.
DISCUSSION
The executrix has filed an accounting for the estate and seeks approval thereon together with an order regarding treatment of the charitable bequest. The first issue raised by Max, Deanna and Jeannie (objectors) is the amount of the commission being claimed by Karen as executrix. The proposed commission is $61,282.72. The objectors disagreed with the amount sought. Max testified Karen did not do enough to receive such an amount. Deanna testified that she did not agree with any of the actions taken by Karen and that the commission was inappropriate.[1] Jeannie also felt the amount of the commission was excessive.
In response, Karen Anthony testified about the work she did on behalf of the estate, including dealing with *246 issues related to the beneficiaries’ father, Max F. Haffner and his filing for bankruptcy in Florida; working with the litigation firm on the mesothelioma settlements; getting the Kunkletown house ready for sale; investigating matters pertaining to the bequest to the charitable trust; preparing for and attending the court hearings on the litigation in this matter; transferring assets to Max F. Haffner per the family stipulation; and dealing with a complex estate currently valued at $1,021,378.74, with other monies expected from the mesothelioma litigation. The commission sought is a flat amount of 6% of the current gross value of the estate.
We have previously set forth analysis of the appropriateness of personal representative fees. See In re: Estate of Lee O’Levich, No. 174 O.C. 2011 (O.C. Monroe County — 10/24/12 — Williamson, J.).[2] We also note that a person seeking compensation for services as a fiduciary, such as an executrix, must establish facts demonstrating they are entitled to such compensation. Feise Estate, 21 Fid .Rep. 2d 317 (2001). The compensation of a personal representative shall be reasonable under the circumstances. 20 Pa. C.S.A. §3537. The determination of whether compensation of an executrix is reasonable is within the discretion of the trial court. See Strickler Estate, 354 Pa. 276, 47 A.2d 134 (1996).
This court has previously set forth a fee schedule, referenced in Johnson Estate, 4 Fid. Rep. 2d 6 (O.C. Del. Ct. 1983), for a personal representative that was fair and reasonable under the facts of that case. See Estate of Lee O’Levich, supra. That schedule set forth a percentage basis for a fee which eliminates having to calculate an hourly rate, specific number of hours, and comparing a subjective analysis of one person’s time being worth more *247 or less than someone else’s time. That fee schedule is as follows:
[[Image here]]
We find that fee schedule to be fair and reasonable in most cases. To justify fees higher than the schedule amount, there must be specific evidence showing the administration of the estate was extraordinary; otherwise, the above fee schedule would be fair and reasonable. See Estate of Lee O’Levich and Feise Estate, supra. Likewise, any deviation down from such schedule would require objectors to show an extraordinary lack of time or effort to administer the estate. Some factors to determine if the administration of the estate was extraordinary includes the difficulty of problems encountered, the degree of responsibility, and if more work or complex issues were encountered than in the average estate. Id.; LaRocca Estate, 431 Pa. 542, 246 A.2d 337 (1968). Here, the executrix has requested a flat percentage basis of 6% of the gross estate of $1,021,378.74 as a commission. The Monroe County Orphans’ Court historically analyzes the amount of commissions as set forth above and in Johnson Estate, supra.
*248 We find that although the executrix spent a lot of time, and there were several issues, including the decedent’s husband’s bankruptcy filing, a charitable trust provision, and litigation with beneficiaries, none of the matters arise to extraordinary circumstances warranting a fee in excess of the above fee schedule, the bankruptcy and charitable trust issues can be addressed by legal counsel, and litigation is a common risk these days in estate matters. We also note the litigation was ultimately resolved by the parties.
At the same time, we do not find that there was an extraordinary lack of time or effort of the executrix warranting a fee less than the schedule amount. There was no evidence of dilatory or bad-faith action taken by the executrix. While the objectors may not have agreed with certain actions of the executrix, or the amount of the commission claimed, or the resulting settlement, there was no evidence that the executrix did nothing as claimed or that she was at fault for anything. The decedent named Karen Anthony to serve as executrix and she is entitled to compensation. That fact sometimes conflicts with the perceptions other family members may have as to the duties and responsibilities of a personal representative, and the feeling that a fellow family member and beneficiary should not be paid extra for their duties as personal representative. We often see existing family tensions increased when there are feelings of a lack of fairness or entitlement in an estate. However, we do not see any evidence warranting a lesser commission than the one we will ultimately award.
This court finds the schedule of fees set forth above is fair and reasonable in this matter. As such, the executrix would be entitled to a commission of $28,160.15 on probate assets (which were $838,671.86) and $1,827.06 *249 on joint and non-probate assets (which were $182,706.88) for a total commission of $29,987.21. This is the amount that is fair and reasonable as a commission payable to the executrix and we will enter a decree consistent with this opinion.
The objector’s/beneficiaries also questioned the attorney’s fees charged to the Estate in this matter. There was no specific complaint as to the amount charged; rather they questioned whether all of the fees were attributable to the estate, or whether some were for the charitable trust. Attorney Merwine, as attorney for the estate, acknowledged the fees were all for the estate and any work that was billed and related to the trust was for the work done on behalf of the estate to advise how to fund the trust. We find no evidence that any of the attorney’s fees billed were for non-estate related matters. As there were no other challenges raised as to the attorney’s fees, we will approve the amount requested.
The objectors/beneficiaries requested that the family exemption be paid solely to Jeannie Jennings as the appropriate family member so entitled. The executrix and counsel for the estate agreed at time of hearing and stipulated to the same. We will adjust the family exemption to reflect Jeannie Jennings only.
Both the executrix and the objectors expressed a willingness to make a one-time donation of one-half of all of the mesothelioma funds received to a charitable cause the decedent would have wanted. We note the decedent left no express indication in her will or codicil of what charitable cause should receive the donation. Nor did the decedent express how to fund or in what manner to distribute funds from the charitable trust. We also note that the Pennsylvania Attorney General’s Office, tasked with oversight of charitable bequests, did not enter an *250 appearance nor provide any guidance in this matter.
The executrix and objector Jeannie Jennings as named co-trustees of any charitable trust, initially agreed to donate equally to the following charities: The Joyce Meyer Ministries and Shores of Grace. Both assist people in third world countries. These were charitable causes that would have been important to the decedent. At time of the hearing, Ms. Jennings indicated she still agreed with this proposal. The executrix/co-trustee testified that she now preferred an equal one-third split between the Joyce Meyer Ministries, Shores of Grace, and Missions Haiti Helping Kids. She stated the Missions Haiti needed funds to build a new orphanage for displaced children in Haiti. The executrix also testified that if not granted in that manner, then she would like one-half to go to the Joyce Meyer Ministries, and the other one-half to be equally divided between Shores of Grace and Missions Haiti Helping Kids.
We find creation of a charitable trust to distribute the monies would not achieve the true interests of the decedent nor would it be the most efficient and economical means of distribution. For instance, a trust would need to be created, significant time and expense incurred for same, preparation and filing of annual tax returns, related advice, etc. We do not believe this was the decedent’s intent based upon the simple handwritten codicil she drafted and signed. The best result to honor the decedent’s intentions would be an outright donation of the monies to those charities selected by the named co-trustees, Karen Anthony (executrix) and Jeannie Jennings. These donations can be made all at one time, or as each settlement distribution is received by the estate. This will maximize the amount of the funds actually donated to the charitable causes. As no issue was raised by the Pennsylvania Attorney General’s Office, or by an *251 interested party as to handling the charitable bequests in this manner, it shall be so ordered.
Finally, we find the co-trustees are in the best position to know what their mother’s wishes and intentions were regarding the charitable bequest. The co-trustees initially agreed as to the charities and division of proceeds to such charities. The only disagreement now is Karen Anthony’s request that a portion of the monies go to a charity to which co-trustee Jeannie Jennings does not agree.
As the decedent entrustedthe two co-trustees to distribute the charitable bequests, we find their initial agreement to be the best resolution. We find the parties initially agreed on the equal distribution to the Joyce Meyer Ministries and Shores of Grace. We further find the decedent would have wanted the co-trustees to agree, rather than leave it up to third parties or the court. Therefore, we will direct the charitable distributions shall be made equally to the Joyce Meyer Ministries and Shores of Grace.
The next objection is to payment of inheritance taxes on joint or non-probate assets from the estate. There were several joint accounts/non-probate accounts and assets which the estate paid the inheritance taxes that were due. Objectors argue it should be paid by the person who received the joint account or non-probate asset. This is a matter in which the will controls. Decedent’s will states:
“4. Death Taxes. I direct that all transfer, estate, inheritance, succession, and other death taxes, not including generation-skipping transfer taxes, which become payable by reason of my death, including interest and penalties, with respect to all property included in the computation of these death taxes, whether or not passing under this will, shall be paid from the principal of my residuary estate, without *252 apportionment.” (emphasis added)
This language dictates the decedent’s intent and controls payment of inheritance taxes. This provision of the will requires that all inheritance taxes due on both probate, non-probate, and joint property, that arise out of the death of the decedent, shall be paid from the estate, Therefore, the payment of inheritance taxes from the estate was proper.
The next objection questions the amount of any deduction to the share of Jeannie Jennings for repairs to the basement necessary at the Kunkletown house due to any work she had done there. At time of the hearing, the deduction was proposed to be $549 for electrical work. Ms. Jennings had no objection to this amount and agreed with that deduction to her share.
The next issue was raised by Jeannie Jennings who asked that the Kunkletown house be deeded in all five (5) beneficiaries’ (children’s) names until time of sale. Currently it is deeded in Karen Anthony’s name with the agreement it is to be sold and proceeds divided among decedent’s five (5) children. The property is under a listing agreement and Karen Anthony is actively pursuing buyers. The price was recently reduced and some repair work was performed on the property. If the title were transferred to the beneficiaries as requested, there would be deed preparation and recording costs. It could also be problematic if a buyer is found, because the beneficiaries already disagree on matters. Placing all five (5) names on the deed, will likely lead to an impasse. The matter could wind up subject to a partition action as opposed to being resolved more economically and expeditiously in Orphans’ Court. Therefore, it would not be in the best interests of the estate and beneficiaries to change the title to the property at this time. The intent of the parties’ settlement agreement is being undertaken and we will not *253 disturb it at this time.
The final objection was more or less withdrawn at time of hearing as well. The objectors stated that the executrix, Karen Anthony, claimed she did not receive two (2) small items of personal property (measuring cup and little figurines). The executrix did not request court intervention on the matter, and all parties appear satisfied, for now, with the personal property they received. This is a minor issue that does not need court intervention at this time. For the reasons set forth above, we will enter an order approving the first and final account with modifications, and with directives concerning the charitable bequests.
DECREE
And now, this 16th day of January, 2015, following a hearing on objections to the accounting and approval of charitable distributions, the court orders as follows:
1. The amount of the executrix commission to be charged to the estate shall be reduced to $29,987.21.
2. The amount of the attorney’s fees charged to the estate is fair and reasonable.
3. The family exemption of $3,500 shall be paid to Jeannie Jennings.
4. The one-half of the mesothelioma proceeds payable to a charitable trust per the codicil shall be divided equally between the Joyce Meyer Ministries and shores of grace charity. No separate charitable trust need be created. The co-trustees named in the codicil and the executrix shall either pay the monies directly to the charities all at one time, or periodically as funds are received by the estate.
5. The objection to payment of inheritance tax due on joint property and non-probate assets from the residuary *254 estate is denied.
6. The objection as to the deduction of $549 from the share of Jeannie Jennings for repairs is denied as moot.
7. The objection and request that the Kunkletown property be deeded to all five of decedent’s children/ beneficiaries is denied.
8. The objection concerning distribution of personal property is denied as moot.

. Deanna also testified that she reluctantly signed the settlement agreement and was unhappy with her father getting the Brodheadsville house.

. Affirmed on appeal by non-precedential decision In re: Estate of Lee O’Levich, No. 385 EDA 2013 (Pa. Super.9/25/13).