J-A02005-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ESTATE OF THOMAS BRAWNER, SR. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: COREN WISE, ESQUIRE | |
| | No. 1144 EDA 2016 |

Appeal from the Decree March 14, 2016
In the Court of Common Pleas of Philadelphia County
Orphans' Court at No(s): 201401043DE

BEFORE:  OTT, J., RANSOM, J., and FITZGERALD, J.[*]

MEMORANDUM BY OTT, J.:                           **FILED APRIL 13, 2017**

Coren Wise, Esquire ("Appellant"), appeals from the Decree entered March 14, 2016,[1] in the Court of Common Pleas of Philadelphia County, ordering him, in accordance with the Orphans' Court's Adjudication of the First and Final Account of George Brawner, Administrator D.B.N. (the "Adjudication"), to disgorge his fee in the amount of $14,845.00, and to be personally liable for up to $16,500.00, to the extent that amount is not recoverable as a surcharge from George Brawner ("Administrator").  Based upon the following, we vacate the portion of the Decree surcharging

---

[*] Former Justice specially assigned to the Superior Court.

[1] As will be more fully discussed below, the Decree at issue is dated March 9, 2016, was docketed on March 11, 2016, and Rule 236 notice was entered on March 14, 2016.

Appellant and ordering him to disgorge his fee of $14,845.00, and remand for the orphans' court's consideration of Appellant's fee under *LaRocca*; and we vacate the portion of the Decree that makes Appellant personally liable for the surcharge imposed against George Brawner, in the amount of $16,500.00, to the extent this amount is not recoverable against George Brawner.

The orphans' court has summarized the facts giving rise to this appeal, as follows:

> Thomas Brawner, Sr. ("Decedent"), died intestate on December 29, 1991. He was unmarried at the time of his death, but was survived by three sons: Thomas Brawner, Jr., Edward Brawner, and George Brawner (hereinafter "Mr. Brawner" or "Administrator").
>
> On January 30, 1992, Thomas Brawner, Jr. was granted Letters of Administration for the Decedent's estate with the consent of his two brothers. On April 15, 1992, Thomas Brawner, Jr., as Administrator, improperly transferred title of 303 N. 41st St. to himself.
>
> On March 15, 2003, Thomas Brawner, Jr. died, and Letters of Administration for his estate were granted to his daughter, Charmaine Brawner. On August 28, 2006, as a result of the death of Thomas Brawner, Jr., George Brawner was granted Letters of Administration D.B.N. for the Decedent's estate.
>
> Administrator entered into an agreement with DDE Investments, LLC, to sell 303 N. 41st St. for $25,000.00. Meanwhile, [Charmaine Brawner] had found another buyer offering $106,200.00. Due to the fraudulent transfer of the property in 1992 and the resulting title issues, Administrator initiated a quiet title action through his counsel, Appellant. By order dated January 30, 2014, the Honorable Judge Fox struck the fraudulent deed and the property was returned to Decedent's estate. After the title issues were resolved, the property sold for $106,200.00 and closing occurred on June 9, 2014.

A total of $48,759.65 was deducted from the gross sale proceeds to pay various costs of administration, including taxes, Appellant's fee of $14,845.00, and $20,000.00 as a "release" to DDE Investments, LLC. As a result of the sale, a total of $57,523.05 was paid to George Brawner as Administrator D.B.N. of Decedent's estate for distribution. Administrator paid himself a commission of $16,500.00 and distributed the remainder of the proceeds in two even shares to himself and his surviving brother, Edward Brawner.

No distribution was made to Thomas Brawner, Jr., his estate, or his personal representative. At trial, Administrator stated that at the time he felt he did not have to pay anything to [Charmaine Brawner, Administratrix of the Estate of Thomas Brawner, Jr.] because Thomas Brawner, Jr. had died.[2]

Upon Citation and subsequent order of the Trial Court, George Brawner filed The First and Final Account of George Brawner, Administrator D.B.N. on December 2, 2014, pertaining only to the real estate located at 303 N. 41st St., Philadelphia.

Objections to the Account were filed by Charmaine Brawner, Administratrix of the Estate of Thomas Brawner, Jr. ("Objectant"). The Objections alleged, among other things, that no distribution of Thomas Brawner, Jr.'s [one-third] share of Decedent's estate was ever made. At trial, Objectant also challenged the distribution made to DDE Investments, LLC at closing. The Objections requested the following relief as a result: (1) Surcharge Administrator the amount of Thomas Brawner,

---

[2] George Brawner stated in his *pro se* Answer to the Amended Petition for Accounting by Administrator, filed by Charmaine Brawner as Administratrix of the Estate of Thomas Brawner, Jr., that when Thomas Brawner, Jr. died he lost his rights as heir of the Estate of Thomas Brawner, Sr., "according to his father's wishes" and because "fraud was involved." **See** Brawner's Answer, 8/13/2014, ¶¶3, 6.

At trial, however, George Brawner testified he did not make one-third distribution to Charmaine Brawner, Administratrix of the Estate of Thomas Brawner, Jr., because there had been a "forfeiture of the agreement." N.T., 10/29/2015, at 86. **See also id.** at 84.

Jr.'s, intestate share ($19,174.35) plus interest; and (2) Surcharge Administrator the amount of any unsubstantiated expenses or commissions.

Appellant was made a party in this matter by Objectant's petition that he be held accountable for the failure to distribute assets to the heirs, filed under control no. 150773. No response was forthcoming, and neither Administrator nor Appellant appeared as ordered at a February 17, 2015 hearing. Appellant was then ordered to respond to the Objectant's original petition. He did so by way of answer with new matter, to which Objectant replied. Administrator was attached in contempt as a result of his failure to appear.

The issues raised by these pleadings were tried at the consolidated adjudicatory hearing held October 29, 2015.

On March 9, 2016, upon consideration of all evidence and testimony presented at trial and post-trial submission of Proposed Findings of Fact and Conclusions of Law, the Trial Court issued the following:

1. Adjudication of the First and Final Account of George Brawner, Administrator D.B.N. (the "Adjudication"), under control no. 145560, docketed on March 10, 2016;

2. Decree vacating George Brawner's bench warrant in attachment, under control no. 150744, docketed on March 11, 2016;

3. Decree ordering Appellant to disgorge the sum he was surcharged in the Adjudication and holding him personally liable beyond that sum for damages caused by George Brawner ("Decree Holding Appellant Liable"), under control no. 150773, docketed on March 11, 2016;

4. Decree removing George Brawner as Administrator D.B.N. ("Decree Removing Administrator"), under control no. 145560, docketed on March 14, 2016.

Orphans' Court Opinion, 7/16/2016, at 1-4.

The orphans' court imposed a surcharge against George Brawner, Administrator D.B.N. and Accountant, in the amount of the commission he paid himself, $16,500.00. The orphans' court also surcharged Appellant and ordered him to disgorge his fee of $14,845.00. In addition, Appellant was ordered to be personally liable above the surcharge of his fee, up to $16,500.00, to the extent that amount is not recoverable against George Brawner. The Objections pertaining to the sale of the property, and those raised at trial pertaining to the release paid to DDE Investments, LLC, were dismissed. The orphans' court further ordered George Brawner removed as Administrator D.B.N. *See* Adjudication, dated 3/9/2016.

Appellant filed exceptions to the Adjudication on April 4, 2016, and filed an appeal on April 12, 2016. Oral argument on the exceptions was held on June 22, 2016, after which the orphans' court, by Decree dated June 27, 2016, found that it lacked jurisdiction to consider the exceptions.[3] *See* Orphans' Court Opinion, 7/21/2016, at 5. Appellant timely complied with the orphans' court's order to file a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b), and the orphans' court issued a Rule 1925(a) opinion on July 21, 2016.

Appellant raises seven issues in this appeal:

---

[3] It is unclear why the orphans' court held oral argument on the exceptions when Appellant had filed his notice of appeal on April 12, 2016.

- 5 -

1. Did the [orphans' c]ourt err in including in its Adjudication language that required that the Appellant file "exceptions within twenty days and an appeal within thirty days"?

2. Did the [orphans' c]ourt err in finding that Appellant's filing was untimely since Notice of the Order in question is reflected on the dockets as being sent on March 14, 2016, and Appellant filed its Exceptions on April 4, 2016, and its Appeal on April 12, 2016?

3. Did the [orphans' c]ourt err in finding that Appellant Mr. Wise failed to appear at a hearing on February 17, 2015?

4. Did the [orphans' c]ourt err in finding that Appellant Wise was the general estate attorney when he was engaged as a real estate attorney to clear title to estate real property?

5. Did the [orphans' c]ourt err in ordering [Appellant] to disgorge the fees and costs related to the Quiet Title Action and clearing the title for sale of 303 N. 41st Street that were paid at closing on the sale of the property?

6. Did the [orphans' c]ourt abuse its discretion in holding [Appellant] responsible for George Brawner's subsequent payment to himself of unsubstantiated Administrator's fees for years 2006 to 2015?

7. Did the [orphans'] court abuse its discretion in holding [Appellant] responsible for distribution of a one-third share from the Estate of Thomas Brawner, Sr., to the Estate of Thomas Brawner, Jr.?

Appellant's Brief at 3–4.

Our standard of review for an orphans' court decree is well settled:

The findings of a judge of the orphans' court division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support. This rule is particularly applicable to findings of fact which are predicated upon the credibility of the witnesses, whom the judge has had the opportunity to hear and observe, and upon the weight given to their testimony. In reviewing the Orphans' Court's findings, our task is to ensure that the record is

free from legal error and to determine if the Orphans' Court's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence.

*In re Estate of Bechtel*, 92 A.3d 833, 837 (Pa. Super. 2014) (citation omitted).

The first two questions involve the timeliness of Appellant's exceptions and notice of appeal. The orphans' court's Adjudication provided:

Exceptions to this Adjudication may be filed within twenty (20) days from the date of entry of the Adjudication. An appeal from this Adjudication may be taken, to the appropriate Appellate Court, within thirty (30) days from the date of entry of the [A]djudication. *See* Phila. O.C. Div. Rule 7.1A and Pa.O.C. Rule 7.1, and Pa.R.A.P. 902 and 903.

Adjudication, dated 3/9/2016, at 9.

For purposes of discussion, the relevant dates are as follows:

Adjudication of the First and Final Account of George Brawner, Administrator D.B.N. – dated March 9, 2016; docketed March 10, 2016; Pa.R.C.P. 236[4] notice given March 14, 2016

_____

[4] Rule 236 states, in part:

(a)     The prothonotary shall immediately give written notice of the entry of …

(2) any other order or judgment to each party's attorney of record or, if unrepresented, to each party. The notice shall include a copy of the order or judgment.

(b)     The prothonotary shall note in the docket the giving of the notice ….

Pa.R.C.P. 236(a), (b).

Decree ordering Appellant to disgorge the sum surcharged in the Adjudication and holding Appellant personally liable beyond that sum for damages caused by George Brawner – dated March 9, 2016; docketed March 11, 2016; Rule 236 notice given March 14, 2016

Exceptions to the "Adjudication, Findings and Order of March 9, 2016" – filed by Appellant on April 4, 2016

Notice of Appeal from "the Adjudication and Order that was entered in this matter on the 14th day of March, 2016" – filed by Appellant on April 12, 2016

*See* Orphans' Court Docket.

The orphans' court found Appellant's exceptions, filed on April 4, 2016, were filed 25 days after the Adjudication, docketed March 10, 2016, and 24 days after the Decree, docketed March 11, 2016. The orphans' court concluded that because the exceptions were filed more than 20 days after the dates the Adjudication and Decree were docketed, Appellant's exceptions were untimely. The orphans' court further found the 30-day period for appealing the Decree ran from March 11, 2016, and expired on Monday, April 11, 2016.[5] Therefore, the orphans' court determined Appellant's April 12, 2016 notice of appeal was also untimely. As more fully discussed below, we agree with the orphans' court that Appellant's exceptions are untimely. However, we find the appeal is timely.

---

[5] *See* Orphans' Court Opinion, 7/21/2016, at 7 n.7.

Regarding exceptions, former Pa. O.C. Rule 7.1 provided, in relevant part:

> Except as provided in Subdivision (e) [regarding Adoptions and Involuntary Terminations], **no later than 20 days after entry of an order, decree or adjudication**, a party may file exceptions to any order, decree or adjudication which would become a final appealable order under PaR.A.P. 341(b) or Pa.R.A.P. 342 following disposition of the exceptions. If exceptions are filed, no appeal shall be filed until the disposition of the exceptions except as provided in Subdivision (d) (Multiple Aggrieved Parties). Failure to file exceptions shall not result in waiver if the grounds for appeal are otherwise properly preserved.

Pa. O.C. Rule 7.1(a) (emphasis added).[6]

Appellant contends the 20-day filing period provided in Rule 7.1 began to run on the date notice of the Adjudication and Decree was given to the parties pursuant to Pa.R.C.P. 236. In support, Appellant relies on ***Reeves v. Middletown Athletic Association et al.***, 866 A.2d 1115 (Pa. Super. 2004). ***Reeves***, however, only addresses the timeliness of an **appeal** under the Rules of Appellate Procedure. ***See id.*** at 1121, *citing* Pa.R.A.P. 301(a) and Pa.R.A.P. 108(b).

The language of Rule 7.1 is clear. Exceptions must be filed no later than 20 days "after entry of the order, decree or adjudication" on the

---

[6] The Supreme Court Order of December 1, 2015, **effective September 1, 2016**, rescinded and replaced Rules 1.1 through 13.3 and Rule 17 of the Orphans' Court Rules and amended Rules 14.1 through 16.12. As of September 1, 2016, "[t]he former exception practice is discontinued[.]". Pa. O.C. Rule 8.1, Explanatory Comment.

docket. Pa. O.C. Rule 7.1(a). Here, because Appellant did not file exceptions until April 4, 2016, *i.e.*, more than 20 days after the dates the Adjudication and the Decree were entered on the docket, the Orphans' Court properly determined the exceptions were untimely.

With regard to the appeal, as the exceptions were untimely, the appeal period was not tolled. **See** Pa.O.C. Rule 7.1, Explanatory Note. Consequently, for Appellant's appeal to be timely, the appeal was required to be filed "within 30 days after the entry of the order from which the appeal is taken." Pa.R.A.P. 903(a).

As mentioned above, Appellant filed his notice of appeal on April 12, 2016. **Reeves, supra**, instructs that "pursuant to the express terms of [Pa.R.A.P. 301(a) and 108(b)], an order is not appealable until it is entered on the docket with the required notation that appropriate **notice** has been given." **Reeves**, 866 A.2d at 1121 (emphasis added). Here, Rule 236 notice for the Adjudication and for the Decree at issue was given on March 14, 2016. Therefore, the appeal period for the Adjudication and the Decree began to run from March 14, 2016. Accordingly, Appellant's appeal, filed 29 days later, on April 12, 2016, is timely.[7]

---

[7] Appellant's notice of appeal states that the appeal is taken from "the Adjudication and Order [sic] that was entered in this matter on the 14[th] day of March, 2016." However, Appellant's notice of appeal attaches the docket sheet showing only the court's March 14, 2016 Decree removing George Brawner as Administrator D.B.N. Nonetheless, because Rule 236 notice for

*(Footnote Continued Next Page)*

The third issue raised by Appellant challenges the finding of the orphans' court that Appellant failed to appear at the hearing on February 17, 2015. Appellant contends he had no notice of the hearing that took place on February 17, 2015, because he was not subject to the court's jurisdiction at that time. He argues:

> The Appellant did not appear because he had no notice of this hearing, had never entered his appearance in Orphans' Court, and was not a party to any proceedings. Not until Objectant [Charmaine Brawner, Administratrix of the Estate of Thomas Brawner, Jr.] filed its Petition for Citation against Appellant on February 27, 2015, was [Appellant] aware and made subject to the jurisdiction of this court.
>
> The Court erred in its recounting of the chronology. Objectant's first petition was only directed to George Brawner as Administrator, [] requesting a surcharge of the administrator only.

Appellant's Brief at 14-15.

Based on our examination of the record, we find that Appellant's position is correct. George Brawner filed the Account *pro se*, and Appellant was not made a party to this proceeding until Charmaine Brawner filed a petition for citation against him on February 27, 2015, after the February 17, 2015 hearing. The orphans' court is incorrect in its finding and, in fact, the orphans' court's Adjudication identifies George Brawner as "*pro se*." However, the court's finding that Appellant "failed to appear" at the February

*(Footnote Continued)* ────────────────

the Adjudication and for the Decree at issue were given on the same date, March 14, 2016, **see** Orphans' Court Docket, we address the appeal.

17, 2015, hearing does not appear to have influenced the court's ultimate determinations.

The remaining questions raised in this appeal involve the surcharge imposed against Appellant and Appellant's personal liability for the surcharge imposed against George Brawner. Initially, we quote the relevant portion of the orphans' court's Adjudication that is the basis of the Decree at issue:

> [T]he court declines to approve any fees for [A]ttorney Wise's work because that work precipitated damages to the [E]state in excess of the fees claimed, and Coren Wise, Esq., is hereby SURCHARGED and ORDERED to DISGORGE the sum of $14,845.00, payable to the [E]state of Thomas Brawner, Jr., [sic[8]] in accordance with the Decree [] entered this date under control no. 150773. It is further ORDERED and DECREED that Coren Wise, Esq., shall also be personally liable to the [E]state of Thomas Brawner, Jr., [sic] beyond the surcharge of fees, up to $16,500.00, to the extent that this amount is not recoverable as a surcharge from George Brawner.
>
> …
>
> The Account shows a combined balance of principal and income before distributions of $40,938.09.[9] To this add back

---

[8] The $14,845.00 fee that the orphans' court required Appellant to disgorge should have been made payable to the Estate of Thomas Brawner, Sr., as this amount would have been part of the Estate monies available for distribution to the heirs, had the fee not been paid to Appellant at the closing on the property. Furthermore, awarding $14,845.00 and $16,500.00 to the Estate of Thomas Brawner, Jr., could result in that estate receiving more than its one-third intestate share of Thomas Brawner, Sr.'s Estate.

[9] Our calculation finds a combined balance of principal and income before distributions, of $41,023.05. This amount is calculated based on the property settlement sheet, showing $106,284.56 (gross amount due to seller) less $48,761.51 (settlement charges), yielding $57,523.05 (cash to
*(Footnote Continued Next Page)*

surcharges of $14,845.00 and $16,500.00 for a balance of $72,283.09, awarded in three equal shares to each of George Brawner, Edward Brawner, and the [E]state of Thomas Brawner, Jr.

The above award is subject to all distributions heretofore properly made.

Leave is hereby granted to the accountant to make all transfers and assignments necessary to effect distribution in accordance with this adjudication.

Adjudication, dated 3/9/2016, at 8–9.

In his fourth issue, Appellant asserts the orphans' court erred in determining Appellant was the Estate's attorney when his legal services were limited to the work that he performed to quiet title to the property and enable the property to be sold as an asset of the Estate of Thomas Brawner, Sr.

Appellant maintains "Of course[,] in the Quiet Title Action and related sale [Appellant] was representing the Estate. But the natural extension of the court's ruling would be, for example, that no tax accountant who was

*(Footnote Continued)* ————————

seller), and additionally deducting the amount of $16,500.00, which was paid by George Brawner to himself as administrator's fees.

The Account filed by George Brawner, Administrator D.B.N. of the Estate of Thomas Brawner, Sr., did not use the gross amount indicated on the settlement sheet, but rather used the price shown on the Agreement of Sale, $106,200.00. From the figure of $106,200.00, he deducted amounts of $48,761.51 for settlement charges and $16,500.00 for his administration fees, to arrive at the figure of $40,938.09 (more accurately, $40,938.49). **See** Final Estate Account, 12/2/2014.

getting a refund to [sic] the Administrator, nor any real estate attorney at closing, would ever be able to pay the funds to the administrator." Appellant's Brief at 17.

The orphans' court opined: "While it is admitted that Appellant represented George Brawner as administrator in the quiet title action, the evidence presented to and credited by the Trial Court establishes that Appellant's representation was never anything short of a general representation of Mr. Brawner in his fiduciary capacity." Orphans' Court Opinion, *supra*, at 9-10 (footnote omitted). The orphans' court pointed out that "Mr. Brawner states in his pleadings he never entered into a written agreement with Appellant, making it all the less likely that the informed consent needed to limit the scope of representation was obtained, and discrete, credible testimony on this area was never presented at trial." Orphans' Court Opinion, 7/21/2016, at 10 (footnote omitted).

In addition, the orphans' court relied on *Atkinson v. Haug*, 622 A.2d 983 (Pa. Super. 1993), which instructs:

> Absent an express contract, an implied attorney-client relationship will be found if: 1) the purported client sought advice or assistance from the attorney; 2) the advice sought was within the attorney's professional competence; 3) the attorney expressly or impliedly agreed to render such assistance; and 4) it is reasonable for the putative client to believe the attorney was representing him.

*Id.* at 986. Applying *Atkinson*, the orphans' court reasoned:

> Based on trial testimony, it appears Mr. Brawner initiated an attorney-client relationship with Appellant by seeking out his

- 14 -

services, first with regard to the civil quiet title action or otherwise, in 2012. This is confirmed in that Appellant did in fact undertake to represent him, as copiously demonstrated by evidence of record. However, Appellant's assertion that his representation was strictly limited to the civil quiet title action is contradicted by Appellant's fee statement, for example, which includes an item for "Administration: Estate of Thomas Brawner" for which he billed $2,500. Appellant also introduced a letter from himself to George and Edward Brawner, and Arnold Wainstein, Esq. for Charmaine Brawner, by writing "Dear Sir/Madam: I represent the Estate of Thomas Brawner, Sr."

Appellant's conduct is likewise consistent with a general representation. He attended closing with the Administrator. He advised the Administrator (and possibly the beneficiaries) of the need for a family settlement agreement. All of this indicates that Appellant impliedly agreed to "render assistance" beyond the scope of the quiet title action. George Brawner indicated throughout that he believed that Appellant was his attorney and represented him generally as administrator. Thus the ***Atkinson*** test supplies an independent basis for finding that an attorney-client relationship existed between Mr. Brawner and Appellant during the quiet title action, the subsequent real estate transaction, and, to an extent, through the subsequent administration of the estate.

Orphans' Court Opinion, 7/21/2016, at 10–11 (footnotes omitted).

Appellant contends the ***Atkinson*** case lends support to **his** position because, in ***Atkinson***, this Court held that the plaintiff's/appellant's subjective belief that the attorney client relationship existed "was an insufficient basis upon which to find there existed a genuine issue of material fact precluding summary judgment." ***Atkinson***, 622 A.2d 987–988. Appellant maintains "[t]here is absolutely no evidence in the record that would show that George Brawner ever sought Mr. Wise's advice in any estate matter before or after the sale of the Property nor that the Estate of

- 15 -

Thomas Brawner, Jr., ever understood Mr. Wise to be general counsel." Appellant's Brief at 19.

The evidence presented at trial showed that on March 24, 2014, prior to closing, Appellant addressed a letter to George Brawner, Edward Brawner, and Arnold Wainstein, Esquire, counsel for Charmaine Brawner, stating that he "represented the [E]state of Thomas Brawner, Sr.," and explained that the proceeds would be "distributed in three equal shares to the three heirs (or their Estate)." Letter from Appellant, 3/24/2014 (Exhibit P-1A; Wise Exhibit 15). This letter is clearly related to the sale of the real estate, and Appellant attended the closing with George Brawner on June 9, 2014.

The only evidence of legal services provided after the closing was the preparation of a family settlement agreement sent to Arnold Wainstein, Esquire, for Charmaine Brawner's signature. **See** "Receipt, Release, and Indemnity Agreement," 6/11/2014 (Wise Exhibit 14). **See also** N.T., 10/29/2015, at 32-34, 37. As such, the record only partially supports the orphans' court's determination that Appellant provided legal services to George Brawner in addition to the quiet title action. The extent and value of those services is to be determined on remand, as discussed below.

In his fifth issue, Appellant claims the orphans' court erred in finding that he took his fee from the Estate funds, and in ordering him to disgorge his fee and costs related to the quiet title action and clearing the title for sale of 303 N. 41st Street. Specifically, the orphans' court surcharged

Appellant and ordered him to disgorge his entire fee, including costs, of $14,845.00 that he had been paid at the property closing.

"Attorneys and executors seeking compensation from an estate have the burden of establishing facts which show the reasonableness of their fees and entitlement to the compensation claimed." *In re Estate of Rees*, 625 A.2d 1203, 1206 (Pa. Super. 1993) (citation omitted). Guidelines for making a determination of appropriate attorney fees in the absence of a contract have been set forth by the Pennsylvania Supreme Court in *LaRocca Estate*, 246 A.2d 337 (Pa. 1968):

> The facts and factors to be taken into consideration in determining the fee or compensation payable to an attorney include: the amount of work performed; the character of the services rendered; the difficulty of the problems involved; the importance of the litigation; the amount of money or value of the property in question; the degree of responsibility incurred; whether the fund involved was "created" by the attorney; the professional skill and standing of the attorney in his profession; the results he was able to obtain; the ability of the client to pay a reasonable fee for the services rendered; and, very importantly, the amount of money or the value of the property in question. *Huffman Estate (No. 3)*, 349 Pa. 59, 64, 36 A.2d 640; *Bickel Appeal*, 388 Pa. 270, 276, 130 A.2d 498; *Fraiman Estate*, 408 Pa. 442, 448, 184 A.2d 494; *Thompson Estate*, 426 Pa. 270, 282, 232 A.2d 625. A larger fee than usual is likewise frequently awarded when an attorney "creates" a fund.
>
> By now it is hornbook law that the reasonableness of the fee is a matter for the sound discretion of the lower Court and will be changed by an appellate Court only when there is a clear abuse of discretion.

*LaRocca Estate, supra*, 246 A.2d at 339.

We recognize that technically Appellant's fees were taken from the gross sale price of the property, and not from the net proceeds as was the $16,500.00 commission that George Brawner paid himself. However, the real estate property was the only asset in the Estate and, therefore, whether Appellant took his fees at or after closing, Appellant's fee is subject to *LaRocca's* reasonableness test.

Here, the orphans' court determined Appellant's fee of $14,845.00 was "grossly excessive," stating:

> George Brawner's ability to pay, even in his capacity as Administrator, was limited by the small estate available, already reduced by various costs and a $20,000 "release." The *LaRocca* court's final "very important" factor, the amount of funds available, weighs heavily against a fee as large as the one Appellant charged, which is almost 14% of the gross estate.

Orphans' Court Opinion, 7/21/2016, at 13 (footnote omitted). Additionally, the orphans' court opined that, while Appellant's total of 53 hours of legal work represented a "significant" expenditure of time, "[t]he overall outcome of the representation was not satisfactory, resulting in the instant litigation." *Id.* The orphans' court credited George Brawner's testimony that "Appellant advised him that he did not need to make a distribution to Charmaine Brawner, either in her individual capacity or her capacity as Administrator of Thomas Jr.s' [E]state." *Id.* at 13 (footnote omitted).

The orphans' court cited *In re Lohm's Estate, supra*, for the principle that "[t]he award of counsel fees presupposes not only that legal services were performed, but that they were performed satisfactorily." *Id.,*

269 A.2d at 456.[10]  Applying *Lohm* and *LaRocca*, the orphans' court "declined to award Appellant any fee from the estate because of the extremely deleterious effect his involvement has had on the estate." Orphans' Court Opinion, 7/21/2016, at 14.

Based on our review, we conclude the orphans' court abused its discretion in determining Appellant is not entitled to **any** fee from the Estate, and that he also must disgorge the amount of $1,595.00 that he received as reimbursement for costs.  **See** Wise Exhibit 13.

As the orphans' court recognized in its opinion, "Mr. Brawner initiated an attorney-client relationship with Appellant by seeking out his services, first with regard to the civil quiet title action or otherwise, in 2012." Orphans' Court Opinion, 7/21/2016, at 10 (footnote omitted).  According to Appellant's invoice, Appellant performed 43 hours of work related to the quiet title action, and 10 hours of work related to "Administration: Estate of Thomas Brawner" and "Prepare/Appear [Redevelopment Authority] Vacant Land Comm."  Wise Exhibit 13. The 43 hours of work was invoiced at

---

[10] *Lohm* involved two attorneys tasked with filing a federal estate tax return, who failed to file a timely return and caused the estate to suffer a large loss.  The Pennsylvania Supreme Court surcharged counsel for negligence and ruled that neither attorney was entitled to a fee award. **See id.**, 269 A.2d at 457.

$10,750.00, the additional 10 hours of work was invoiced at $2,500.00, and reimbursement of legal fees was invoiced at $1,595.00.[11] *See id.*

The evidence showed the quiet title litigation was resolved satisfactorily on January 30, 2014,[12] when the Honorable Judge Idee Fox struck the fraudulent deed and the property was returned to the Estate of Thomas Brawner, Sr. But for the success of the quiet title action, the property that had been fraudulently transferred by Thomas Brawner, Jr., to himself, would not have been an asset of Thomas Brawner, Sr.'s Estate. *See* N.T., 10/29/2015, at 52-53. Furthermore, Appellant arranged the $20,000.00 release with the original buyer found by George Brawner, who had an agreement to pay $25,000.00 for the property. This release allowed the property to proceed to closing with the buyer secured by Charmaine Brawner, who paid $106,200.00.[13] Hence, Appellant's handling of the quiet title action was successful, and there was no loss to the Estate. Therefore, the orphans' court should have reviewed Appellant's bill for 43 hours for the

_____

[11] Although Appellant itemized the 43 hours of work on the quiet title action, he did not itemize the remaining 10 hours. *See* Wise Exhibit 13.

[12] *See* N.T., 10/29/2015, at 52; Wise Exhibit 10 (Civil Docket Record).

[13] In its Adjudication, the orphans' court dismissed the objections raised at trial pertaining to the release paid to DDE Investments, LLC. *See* Adjudication, dated 3/9/2016, at 9.

quiet title action to determine whether the amount of time and hourly rate were appropriate for the work performed by Appellant.

The 10 hours of Appellant's legal work for estate administration is a separate consideration.[14] Here, the orphans' court found:

> Appellant, either by commission or omission, is at least partly responsible for the losses to the [E]state caused by George Brawner's actions as Administrator D.B.N., who on numerous occasions stated that Appellant advised him that he did not need to make a distribution to Charmaine Brawner, either in her individual capacity or her capacity as Administrator of Thomas Jr. 's [E]state.[25]
>
> _____
>
> [25] *See, e.g.*, Notes of Testimony, October 29, 2015, p. 86.
>
> _____
>
> Even if he never advised George Brawner not to make a distribution to the Estate of Thomas Brawner, Jr., Appellant had an obligation to disabuse him of the incorrect but foreseeable notion that nothing was owed to the estate of a now deceased heir who survived the decedent.

Orphans' Court Opinion, 7/21/2016, at 13. We find no support in the record for this finding.

The evidence presented at trial included Appellant's March 24, 2014, letter regarding the property settlement, which was addressed to George Brawner, Edward Brawner, and the attorney for Charmain Brawner, and

_____

[14] The invoice date for these 10 hours is April 15, 2014. *See* Wise Exhibit 13. It appears that the only legal work performed by Appellant for the Estate after the June 9, 2014 closing was the June 11, 2014 release/family settlement agreement.

clearly explained the Estate was to be divided into thirds. *See* Exhibit P-1A; Wise Exhibit 15. In addition, the post-settlement release prepared and sent by Appellant on June 11, 2014, to Charmaine Brawner's attorney, indicated there would be distribution of the Estate in three equal shares. *See* Wise Exhibit 14.

Appellant testified that at all times he advised George Brawner that the Estate monies were to be divided equally among the three heirs. *See* N.T., 10/29/2015, at 39-41, 47. Furthermore, the evidence showed that Appellant did not hold the proceeds of the sale or have a checkbook for the Estate. *See id.* at 39–40, 93–94.

At trial, George Brawner testified:

I told Charmaine that Wise had told me that there was no payment on the basis that the lawyer didn't sign the agreement or papers that she was supposed to sign and that's why I didn't have to give up the money. He told me it was a forfeiture of the agreement that **was supposed to be made on the basis of the one third distribution**.

So she told me she was going to see about that in court to know what was going on. But I told her that Wise didn't do what I told him to do. On the basis I told Wise that the contract was based on the $106,200 that for me to sell the property, Charmaine had something to do with this to sell the property, the broker.

And I told Wise, I said, let me talk to the broker, because the property is in [sic] my responsibility now. And I said, let me talk to the broker, you understand. And I told – to have the broker give the money back to the people that was going to be buying the property, $3,000 to the broker.

Wise said, okay. I take care of that. But when I got the receipts, I find out he didn't do what I told him to do.

N.T., 10/29/2015, at 86–87 (emphasis added).

We recognize that the orphans' court made a credibility determination and accepted George Brawner's testimony that Appellant advised him that he did not need to make a distribution to the Estate of Thomas Brawner, Jr. However, the documentary evidence that showed George Brawner was properly advised regarding a one-third distribution, which he clearly ignored. George even testified that he understood there was "supposed" to be a one-third distribution. *Id.* at 86. Therefore, the record does not support the orphans' court's finding that Appellant did not attempt to disabuse George Brawner of his notion that Thomas Brawner, Jr.'s Estate was not entitled to a one-third share of the Estate of Thomas Brawner, Sr.

Furthermore, there is no evidence that Appellant had control of the Estate funds, and, in fact, the orphans' court's Adjudication identifies George Brawner as "pro se" in these proceedings on the "First and Final Account of George Brawner, Administrator." *See* Adjudication, dated 3/9/2016, at 1. Accordingly, the orphans' court erred in its legal conclusion that Appellant was responsible for George Brawner's at risk distribution. As such, the orphans' court's reliance on *Lohm* as support for its decision to order disgorgement of Appellant's entire fee is misplaced.

Therefore, based on our discussion, we vacate the portion of the orphans' court's Decree surcharging Appellant and requiring disgorgement of the amount of $14,845.00, and remand this case to the orphans' court to

consider counsel's fees (53 hours) under **LaRocca,** and to allow Appellant to retain the $1,595.00 he was reimbursed for costs.

Turning to the sixth issue, Appellant contends the orphans' court erred in holding him personally liable for the surcharge imposed against George Brawner in the amount of $16,500.00, to the extent that amount is not recoverable against George Brawner. Appellant argues that "[t]he only credible evidence in the record shows that Mr. Wise advised Mr. Brawner that the proceeds of the Property [are] to be divided into three shares." Appellant's Brief at 29-30.

In his seventh issue, Appellant claims that the orphans' court abused its discretion in holding Appellant responsible for distribution of a one-third share from the Estate of Thomas Brawner, Sr., to the Estate of Thomas Brawner, Jr. Appellant has argued these issues together.

By way of background, the orphans' court surcharged George Brawner the amount he took as his commission, $16,500.00, finding that "the services actually performed by the Administrator D.B.N. were clearly unsatisfactory or non-existent[.]" Adjudication, dated 3/9/2016, at 5. We find no fault with this determination.

In holding Appellant personally liable for the amount of the surcharge assessed against George Brawner in the amount of $16,500.00, to the extent this amount is not recoverable against George Brawner, the orphans' court reasoned:

> The duty that Appellant owed to the beneficiaries of Decedent's Estate was derived from that of his client, the administrator – namely, to fairly and efficiently administer the estate according to the law, exercising the care that a man of ordinary prudence would in the administration of his own estate, and "to see that [his] purely private interests were not advanced at the expense of the estate." *Estate of Pew*, 440 Pa. Super. 195, 236 (1994) (citations omitted); *In re Pitone's Estate*, 489 Pa. 60, 66 (1980) (citing *Herman's Estate*, 90 Pa. Super. 512 (1927)). Finally, where a fiduciary possesses skills that the "ordinary person" does not possess, and which are applicable to the discharge of his duties, the standard of care by which he must act will be elevated accordingly. *In re Killey's Estate*, 457 Pa. 474, 477 (1974).

> Here, Appellant had a duty that devolved to him through his representation of the Administrator, but as a practicing attorney, he was held to a higher standard and was bound to act as a prudent attorney would under the circumstances. By failing to take steps appropriate to an attorney, like ensuring that Mr. Brawner distributed estate assets to estate beneficiaries appropriately or ensuring that Mr. Brawner was given proper advice regarding the distribution of proceeds, Appellant breached his duties and caused harm to the beneficiaries of Decedent's estate, which would have been whole but for his inaction.

> Mr. Brawner indicated that at trial he had dissipated the funds that he had distributed to himself, and that his brother Edward was now insolvent. Further, as noted above, the Trial Court found that Appellant bore at least some responsibility for the harm caused by Mr. Brawner as administrator of the estate in that Appellant failed to take ordinary precautions.

Orphans' Court Opinion, 7/21/2016, at 14-15. Based on our review, we

conclude the orphans' court abused its discretion and committed an error of

law in holding Appellant personally liable for the surcharge imposed against George Brawner.[15]

When the closing occurred on June 9, 2014, the check for the net proceeds was made payable to the Estate, and George Brawner took the check in his capacity as Administrator.[16, 17] Shortly thereafter, he opened an account and deposited the proceeds in a bank.[18] At trial, when he was asked when he moved the money into Edward Brawner's account, George testified "10, 15 days, something like that." N.T., 10/29/2015, at 94.[19] However, Appellant's pre–closing letter of March 24, 2014, letter advised the Estate proceeds were to be divided equally among the three heirs.[20] This

_____

[15] We find the case law cited by the orphans' court unpersuasive.

[16] N.T., 10/29/2015, at 40, 79, 90.

[17] It would not be not unusual for an administrator to maintain control of estate funds to minimize legal fees for estate administration.

[18] *Id.* at 93–94.

[19] George Brawner's *pro se* Account attaches two receipts, both dated June 18, 2014, that show distributions to himself and his brother, respectively, of $20,511.00, *i.e.*, one-half of the Estate proceeds left after George Brawner paid himself $16,500.00 for administrator's fees. **See** Account, filed 12/2/2014. George Brawner's failure to make a one-third distribution to Charmaine Brawner, in her capacity of Administratrix of the Estate of Thomas Brawner, Jr., is particularly egregious since it was Charmaine who found the buyer who agreed to pay $106,200.00 for the property.

[20] "In the event the sale is approved and all claims are settled, it is anticipated that proceeds, after payments of settlements, commissions, taxes, expenses, and fees will amount to approximately $60,000, to be
*(Footnote Continued Next Page)*

distribution scheme is confirmed by the post-closing release/family settlement agreement, which was prepared by Appellant on June 11, 2014, and executed by Charmaine Brawner on June 24, 2014. *See* N.T., 32-33; Wise Exhibit 14.

After closing, Appellant had no control over the Estate funds. Furthermore, there was no testimony that Appellant was consulted by George Brawner when he paid himself the $16,500.00 commission or that George Brawner consulted Appellant about distributing the Estate funds before the family settlement agreement was signed by all parties. **George Brawner made an illegal, at risk distribution for which he is solely liable.**[21] *See* 20 Pa.C.S. §§ 3532, 3533. *See also In re Estate of Geniviva*, 675 A.2d 306, 311 (Pa. Super. 1996) (finding "executor's reliance on counsel does not provide him with immunity in this instance"; "[t]he

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯⎯

distributed in three shares to the three heirs (or their Estate.)" Letter from Appellant to Arnold Wainstein, Esquire, Edward Brawner, and George Brawner, 3/24/2014 (Exhibit P-1A; Wise Exhibit 15).

[21] Charmaine Brawner, Administratrix of the Estate of Thomas Brawner, Jr., initiated the petition for citation seeking to hold Appellant responsible for the Estate monies, in an attempt to make a successful recovery. She filed the petition for citation against Appellant on February 27, 2015. By that time, George Brawner had filed a *pro se* Answer to her amended petition for a citation for an accounting, had filed his Account that showed distribution of all Estate funds to himself and his brother, Edward, and had failed to appear at the February 17, 2015 hearing as ordered by the court. *See* Decree, 3/25/2015 (issuing bench warrant for George Brawner for failure to appear at February 17, 2015 hearing).

ultimate responsibility for the payment of estate taxes falls upon the executor.").

Even accepting the orphans' court's credibility determination that Appellant failed to disabuse George Brawner of the incorrect notion that he did not have to distribute a one-third share to Thomas Brawner's Estate, the orphans' court erred in its legal conclusion that Appellant can be held personally liable for George Brawner's illegal actions. The petition filed by Charmaine Brawner provides no basis upon which to hold Appellant personally liable for the surcharge imposed against George Brawner for Administrator's fees of $16,500.00, to the extent that amount is not recoverable against George Brawner.

In sum, while we recognize the Estate of Thomas Brawner, Jr., never received its rightful one-third share of the Estate of Thomas Brawner, Sr., we conclude that Appellant cannot be held liable for George Brawner's actions.

Accordingly, we vacate the portion of the Decree surcharging Appellant and ordering him to disgorge his fee of $14,845.00, and remand for the orphans' court's consideration of the appropriate amount of Appellant's fee under *LaRocca*;[22] and we vacate the portion of the Decree that makes

_____

[22] In the event the orphans' court declines to approve Appellant's total legal fee, any amount not approved should be ordered to be disgorged, payable to the Estate of Thomas Brawner, Sr., as each beneficiary would be entitled to
*(Footnote Continued Next Page)*

Appellant personally liable for the surcharge imposed against George Brawner, in the amount of $16,500.00, to the extent this amount is not recoverable from George Brawner. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/13/2017

*(Footnote Continued)* ───────────

one third of those amounts, reduced by the improper at risk distributions of George Brawner.